Ark. Motor Freight Line, Inc., *v*. Missouri Pacific Freight Transport Company.

5-1839                                          326 S. W. 2d 820

Opinion delivered May 18, 1959.

[Rehearing denied September 7, 1959]

*Clifton Wade* and *Louis Tarlowski,* for appellant.

*Pat McHaffy, William J. Smith* and *Ben Allen,* for appellee.

J. Seaborn Holt, Associate Justice. In 1945 the Arkansas Public Service Commission issued to Columbia Motor Transport Company a Certificate of Public Convenience and Necessity, authorizing it to operate as a motor carrier of freight for compensation, over Arkansas highways between certain stations on certain lines of the Missouri Pacific Railroad Company. This certificate was upheld by this court in *Arkansas Express, Inc.* v. *Columbia Motor Transport Company,* 212 Ark. 1, 205 S. W. 2d 716, conditioning same, however,

with the proviso that any service authorized must move by co-ordinated rail and truck service (or both rail and truck). The Columbia certificate above was later transferred to appellee, the Missouri Pacific Freight Transport Company. The present case, which comes here for trial *de novo*, involves the legality of an order of the Arkansas Commerce Commission, on December 9, 1957, eliminating a certain restriction appearing in appellee's certificate which prohibits it from carrying freight shipments by motor vehicle which originate in Little Rock and are destined to El Dorado and Gurdon. On a hearing, two of the three members of the commission, (one member dissenting) granted appellee the relief prayed and on appeal to the Pulaski Circuit Court, the commissions' action was affirmed. This appeal followed.

Appellant says, ''The appellants, constituting the protestants at the hearing, contend the elimination of the sought restriction is tantamount to the institution of a new motor carrier service between Little Rock, Gurdon and El Dorado, requiring proof of public convenience and necessity. And appellee, having failed to introduce such proof of public need, the order of the Arkansas Commerce Commission is arbitrary, unsupported by the record and contrary to the express provisions of the Arkansas Carrier Act (Act 397 of 1955)''.

After a careful review of the record presented, we have reached the conclusion that appellant's contention should be sustained. Our conclusion is in accordance with, and follows, the following findings and conclusions of law of the dissenting commissioner: ''One of the restrictions originally imposed by the commission, and approved by the Supreme Court in the Columbia case was as follows: '4.(c) No shipments shall be transported by the carrier which originate in and are destined to the following stations in Arkansas: In Little Rock to McGehee; in Little Rock to Ft. Smith; in Little Rock to Gurdon; in Little Rock to El Dorado; in Texarkana to Little Rock; in Ft. Smith to Little Rock; in McGehee to Lexa; and in McGehee to Little Rock.'

"By this proceeding the applicant seeks to now amend this provision of the Commission's original order by deleting therefrom 'in Little Rock to Gurdon; in Little Rock to El Dorado'.

"What is involved here is simply whether the present restriction, which operates to prevent the petitioner from handling shipments originating in, and destined from Little Rock to Gurdon and Little Rock to El Dorado, should be removed. It appears clear to me that since the restriction was imposed by this Commission and ordered by the Supreme Court of Arkansas in the Columbia case, this Commission cannot treat the present application for removal of such restrictions as anything other than an application for an additional certificate, or additional carrier authority, and the Motor Carrier Act (Act 397 of 1955) expressly provides that before any authority can be granted, the applicant must discharge the burden of proving public convenience and necessity. The pertinent Section [Section 9 (a)] of the Act provides in part: 'Subject to the provisions of this Act, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application if it found that the applicant is fit, willing and able properly to perform the service proposed and to conform to the provisions of this Act and the requirements, rules and regulations to the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied; and the burden of proof shall be upon the applicant . . .'

"The nature and degree of proof required to establish such public convenience and necessity to support an order of this Commission in granting a certificate to a motor carrier to operate in competition over the same highways served by other motor carriers has been well defined and established by the Supreme Court of Arkansas in *Missouri Pacific Railroad Company* v. *Williams*, 201 Ark. 895, 148 S. W. 2d 644. The petitioner has failed

to offer a single witness who could testify that the present or future public convenience and necessity requires the removal of the restrictions imposed in the original order. It contends that ''public convenience and necessity'' does not necessarily mean a need for additional service to the public. It urges that the granting of this authority would result in a more efficient and economical operation by it and its associate, the Missouri Pacific Railroad Company, because it will release to the public box cars presently required, for the Little Rock to Gurdon; Little Rock to El Dorado haul, and that this fulfills the requirement of a public need and necessity. This question I deem settled by *Boyd* v. *the Arkansas Motor Freight Lines, Inc., et al*, 222 Ark. 599, 262 S. W. 2d 282, where, in a case practically on all fours with this one, the Court in this connection said: '. . . the prime object and real purpose of commission control is to secure adequate and sustained service for the public at the least possible cost, and to protect and preserve investments already made for this purpose, for ''Experience has demonstrated beyond any question that competition among natural monopolies is wasteful economically and results finally in insufficient and unsatisfactory service and extravagant rates.

'' 'Boyd's testimony and that of his witness, Sears, emphasized the convenience that would flow to Luper with issuance of the certificate, but intrastate convenience and necessity were not shown unless we assume without evidence that the government's unexpressed interest must be taken for granted. No other shipper of explosives of the ingredients or materials entering into the manufacturing process had the slightest concern respecting the method of making these shipments. The burden of establishing the necessity and convenience contemplated by the lawmaking body rested upon the applicant, who in this case did not go beyond the profit element to himself and to his prospective associate, Luper Transportation.'

''The only proof introduced by the petitioner, Missouri Pacific Freight Transport Company, in this pro-

ceeding, was the profit element accruing to its parent, the Missouri Pacific Railroad Company, not a party here. In my opinion any presumed advantage that the public might possibly receive from the release of the box cars of the petitioner's parent company and the profit and convenience flowing to the Missouri Pacific Railroad Company and to the petitioner on the one hand, is not sufficient to offset the uniform advantage flowing to the public in holding down wasteful and detrimental competition among natural monopolies.

"The protesting motor carriers presently authorized to serve the territory in question adduced abundant and undisputed testimony that they are ready, willing and able to render the proposed motor carrier service sought by the petitioner, and that their existing service is adequate to meet the existing and future public need. They contend that to grant the authority sought by the petitioner is to inaugurate a new over-the-road motor carrier operation between Little Rock and Gurdon and Little Rock and El Dorado, a service not heretofore authorized. With this premise I agree. Since the proposed service is substantially broader and materially different from the service authorized in the original certificate, of which petitioner is the transferee, it appears clear to me that the granting of the requested authority will, in effect, permit a new motor carrier service without any proof of public need therefor. This will result in detriment and harm to the existing certificated motor carriers without any corresponding benefit to the shipping and receiving public of Arkansas.

"If the restrictions in the instant certificate were properly imposed when it was originally granted, upon the testimony there offered — and there is no testimony now that the public necessity or convenience requires a change — I feel that we are bound by the former opinion of this Commission, as modified and affirmed by the imposition of a further restriction by the Supreme Court in the Columbia case. I deem that decision as controlling this issue. The Court there said: 'The new coordinated rail and truck service will doubtless be of great conven-

ience to the shipping public, and, while the rights of those already in the transportation field must be taken into account in a proceeding of this kind, the paramount consideration is always the interests of the public, at whose expense the highways used in this type of transportation are built and maintained. In granting certificates, the public convenience and necessity should be the first consideration, and the interest of public utilities already serving the territory secondary, . . . But under the order made by the Commission the service authorized was not limited to a rail and truck or truck and rail movement of freight. Under this order a hauling of freight by appellee's trucks from shippers at certain points to consignee at other points, without any preceding or succeeding movement by rail, is authorized. Now this would permit appellee, which is not a railroad corporation, to haul freight by motor truck — without any movement whatever by rail — on railroad bills of lading at rates fixed for rail transportation. While the testimony adduced before the Commission was sufficient to show the need of supplementing rail transportation of freight with a motor truck haul thereof, it did not show the necessity of any additional transportation facilities by motor truck only. The Commission should have provided that the authorization for the new service would permit only freight shipments that move partly by rail and partly by truck.

" 'The judgment of the lower court is modified so as to require the Commission to amend the order appealed from by including therein this sentence: "Provided, that the service authorized by this order shall not include transportation of any freight in which there is not a *bona fide* movement by rail and truck or by truck and rail.'

"The petitioner is a motor carrier, moving shipments upon motor carrier billings, subject to motor carrier tariff, without a prior and subsequent movement by rail, with pickup and delivery service unrestricted and is therefore, in the same category as the protesting carriers. As a motor carrier, it is here seeking to inaugurate a new service without any proof of public need.

The law makes no distinction between applications filed by trucking subsidiaries of railroads and those filed by others. Each must prove public need as a condition precedent to obtaining a certificate of public convenience and necessity. There is nothing in the majority's order to prevent the applicant here from instituting as many schedules per day or night as it may desire, between Little Rock, Gurdon and El Dorado, and between other Arkansas points and these cities. There is nothing to prevent applicant from soliciting traffic from these points to move wholly by motor carrier from most of the State upon motor carrier billing, and at motor carrier rates. Since petitioner is a member of the general class, it should be governed by, and subject to the same laws, rules and regulations as are all other members of the class. If Sections 8 and 9 of the Arkansas Motor Carrier Act are applicable to protestants when they seek a certificate for a new or additional service, then these same statutory provisions are, and should be, applicable to the petitioner when, as now, it seeks additional authority to that which it now holds.

"It is undisputed that the present motor carrier service in the territory involved is entirely adequate, and that there is no need for additional motor carrier service over the routes involved. Granting the petition means authorizing another motor carrier to serve a territory now having admittedly meager tonnage to be transported, with an over abundance of motor carriers presently capable, willing, and able to handle such small volume of tonnage. In my opinion, it will result in not only a useless duplication of service, but also to the detriment of the existing certificated carriers and the interests of the public, which it is our duty to protect.

"In my opinion, the petitioner has failed to discharge the burden of proof incumbent upon it, and the petition should be denied."

Accordingly, the judgment is reversed and the cause remanded to the Pulaski Circuit Court with instructions to direct the Arkansas Commerce Commission to  set

aside its order herein rendered and deny appellee's petition.

ROBINSON and JOHNSON, JJ., dissent.