664

5-3839         401 S. W. 2d 571

Opinion delivered April 18, 1966

*Louis Tarlowski,* for appellant.

*William J. Smith* and *Ben Allen,* for appellee.

CARLETON HARRIS, Chief Justice. Missouri Pacific Truck Lines, Inc., appellee herein, filed an application with the Arkansas Commerce Commission, wherein it sought authority (an unrestricted Certificate of Public Convenience and Necessity) to conduct motor carrier operations as a common carrier of general commodities, originating in Little Rock, and destined to El Dorado, and also Little Rock to McGehee, and return.[1] Arkansas-

---

[1]Missouri Pacific presently holds authority to transport general commodities between Little Rock and El Dorado and Little

Best Freight System, Inc., hereafter called "ABF" and Red Line Transfer and Storage Company, Inc., hereafter referred to as "Red Line," filed a written protest, asserting that no public need existed for the applicant's proposed service, and alleging that protestants and other certificated common carriers were rendering all necessary service. ABF has a certificate of public convenience and necessity, authorizing it to conduct operations from Little Rock to El Dorado and return, and Red Line is authorized by its certificate to conduct motor carrier operations from Little Rock to McGehee and return. On hearing, the commission granted the application, and protestants appealed to the Pulaski County Circuit Court. That court affirmed the commission, and from the judgment so entered, appellants bring this appeal.

This is the third attempt by Missouri Pacific to acquire the authority sought as far as Little Rock to El Dorado is concerned. See *Arkansas Motor Freight Line, Inc.* v. *Missouri Pacific Freight Transport Company*, 230 Ark. 587, 326 S. W. 2d 820, and *Ark. Best Freight System, Inc.* v. *Missouri Pacific Transport Company*, 233 Ark. 685, 348 S. W. 2d 694. We proceed first to a discussion of this phase of the litigation.

Mr. M. J. Hrebec, Vice President of Transportation and Maintenance for Missouri Pacific Truck Lines, and assistant to the General Manager of Merchandise Operations of Missouri Pacific Railroad, testified that, if the certificate were granted, a truck would depart from Little Rock at 12:30 A.M., arrive at El Dorado at 6:00 A.M., and deliveries would be made from 7:00 A.M. until 9:00 A.M. He stated that the company had pickup trucks in Little Rock, where they presently render service from 8:00 A.M. to 5:00 P.M., but upon the granting of the application, these trucks would commence pickup service around 7:00 A.M., and continue until 6:00 P.M.

Rock and McGehee, and also to go beyond those cities, but its certificate does not permit direct shipments originating in Little Rock to those two cities.

Five witnesses from El Dorado, and four witnesses from Little Rock, testified in support of the application. In general, these customers desired later pickups (in Little Rock), and earlier deliveries (in El Dorado).

William Kirby, Manager of Worsham Wholesale in El Dorado, dealer in cigars, candy and cigarettes, testified that early morning delivery service would keep him from having to carry a large stock; that none of the present carriers made deliveries before 9:00 A.M., and generally the deliveries ranged from 10:00 A.M. to up until the afternoon. He stated that his company received good service from ABF, but that it was "afternoon service;" deliveries were usually made from just before noon to 1:00 P.M.

Grady Jean of El Dorado, engaged in the lumber and supply business, testified that proposed service by Missouri Pacific would be a convenience to meet a need of his business; that such service would prevent his having to carry a large inventory. He said that sometimes ABF made deliveries around 9:00 or 10:00 o'clock, but generally, between 9:00 A.M. and noon. He stated that his company had no other complaints, but that later pickups in Little Rock and earlier deliveries in El Dorado would benefit his business. On cross-examination, the witness admitted that he rents from Missouri Pacific Railway Company, and he stated that if the certificate were granted, it would probably benefit him more than anyone else in El Dorado since his place of business is adjacent to the Missouri Pacific warehouse.

L. H. Kerr, engaged in the hardware and furniture business, testified that late afternoon pickups in Little Rock, and early morning delivery in El Dorado, were primarily his needs for additional service, and that fairly early morning deliveries would create a better customer relationship with persons whose refrigerators or freezers were in need of repairs, since the repair parts would be obtained earlier. He specifically made complaint about a shipment made two years before,

which evidently was misplaced, and he stated that it was three days before he received it.

David Hargett, of Gibson Products Company, and Don Cash, engaged in the general foods merchandise distributing business, testified that early morning deliveries would benefit their companies. Cash was not personally familiar with the type of service rendered by ABF.

Kenneth Hudspeth, engaged in the building material business in Little Rock, testified that a later pickup service would be beneficial; that if a request was made to ABF for a pickup by 3:00 o'clock, the company would get service, but if the request was not made until 4:00 P.M., pickups would not always be made.

Joe Copeland, employed by Orgill Brothers of Little Rock, testified that at times the company had trouble getting pickups from ABF after 3:00 P.M. He stated that he had complained to the dispatcher at ABF four or five months earlier about late pickup service, but that the service did not improve.

Ben Smothernon, of Little Rock Furniture Manufacturing Company, was particularly interested in late pickups. Mr. Smothernon, however, stated that his company mainly used company trucks to make deliveries to El Dorado customers, and he only used common carriers when a customer ordered a bedroom suite, and wanted it before the company truck could arrive there. The witness said, that with the exception of the late pickups, the service of ABF was satisfactory.

Roy F. Baker, employed by Gunn Distributing Company of Little Rock, engaged in selling heating, air conditioning, etc., testified that his company stayed open until 5:00 P.M., and that he had, at times, been forced to wait on ABF for late pickups. Aside from this matter, he stated that the service was satisfactory. Mr. Baker had testified on behalf of Missouri Pacific in its last

case. We thus have nine public witnesses, testifying in behalf of the application, five from El Dorado and four from Little Rock.[2]

Herman L. Reed, City Dispatcher for ABF, testified that the company's pickup trucks were equipped with radios, and that the company had never refused to accept any calls for pickups, or make such pickups, after 3:00 P.M. The witness stated that pickups were made as long as offices remained open, and that pickups had been made as late as 7:00 P.M. He testified that the Little Rock terminal was open 24 hours a day, and that trucks were constantly being loaded, and sent out. The witness stated that he had not received any complaints of late pickups.

William H. Curry, General Traffic Manager of ABF, stated that it had been a long number of months since he had received any complaint from those receiving shipments in El Dorado.

Wilton E. White, Chairman of the Greater Little Rock Terminal Managers Association, testified that he knew of his own knowledge that ABF and Red Line made pickups in Little Rock after 3:00 P.M. and that, in fact, both companies had picked up and delivered freight as late as 6:00 or 7:00 o'clock.

The record reflects that, for the months of January, February and March of 1963,[3] there were 164 different shippers over ABF from Little Rock to El Dorado, and 218 consignees. It at once becomes apparent that, considering the total number of shippers and consignees, the complaints, and those supporting additional service, are few indeed. In fact, we have a great deal of difficulty in seeing any difference in the record before us at the present time, and the record that was presented in *Arkansas Best Freight System, Inc. v. Missouri*

---

[2]In *Arkansas-Best Freight System, Inc. v. Missouri Pacific Transport Company, supra,* eight public witnesses from El Dorado testified on behalf of appellee.

[3]The hearing before the commission was held in May, 1963.

*Pacific Transport Co., supra.* There, as here, practically all of the proof relating to necessity and convenience referred simply to late afternoon pickups and early morning deliveries. Much of the language of that opinion is entirely apropos in the present instance. There, we said:

"* * * The Commission's order granting the application makes no requirement that the proposed improvements be put into effect by the appellee. As far as we can see there is really no assurance whatever that the appellee's service will actually be superior to that already available to the public."

Here, too, there is no requirement that Missouri Pacific furnish the service that it contends it will be able to give. In *Arkansas Best Freight System, Inc.* v. *Missouri Pacific Transport Company, supra,* we held that Missouri Pacific had not met the burden of proving that its application should be granted, and the present record contains no additional evidence that would now justify the granting of the order. As in that case, we are "unable to say that the appellee has met the burden of proving that its application should be granted * * *."

Turning now to Red Line, Mr. Hrebec testified that if the application were granted, the Little Rock to McGehee schedule would call for a truck to leave Little Rock at 2:15 A.M., and go direct to McGehee, arriving there at 6:00 A.M.; pickup and delivery service would start probably at 7:00 A.M., and last until approximately 6:00 P.M. each day. Only four public witnesses from McGehee testified in behalf of the application. Mr. Carl Lucky, who operates the Chevrolet company in that city testified:

"There are times when we would be out of an automotive part or a heavy truck part and it would assist us in having a little bit better service."

However, he stated that he found the Red Line

service to be reasonably satisfactory to meet his needs.

Lester Warick, engaged in the wholesale grocery, tire and tire repair business in McGehee, testified that the proposed service would probably be a convenience to his business, but that Red Line had rendered very good service. The witness stated that, though Red Line was doing a very good job, he believed increased competition would make for better service.

Virgil Peacock, engaged in the furniture and appliance business, obviously felt a sense of loyalty to Missouri Pacific. He stated that McGehee was a ''Missouri Pacific stronghold,'' and had meant much to the economy of the city. ''The Missouri Pacific payroll has been cut considerably but we still know when the Missouri Pacific payday comes along down there and the people down there feel a sense of obligation.'' He said that he always specified in every order that merchandise be shipped by Missouri Pacific. The witness testified that his main complaint against appellant company was occasioned by damage claims on property that had been shipped.

Robert Adcock, engaged in the retail building material and wholesale grocery business, testified that he did not receive shipments before 8:30 or 9:00 o'clock, and also that early morning service would permit him to better meet competition.

None of these people had made any complaint at all to the local manager of Red Line, Roger Horan. Mr. Horan testified that he opened the terminal at 5:00 A.M. each day, and that he operated six trucks in pickup and delivery service in McGehee.

Harry King, traffic manager and treasurer of Red Line, testified that the company's Little Rock terminal opened at 7:00 A.M., and closed when the last pickup was made, usually between 6:30 and 7:00 P.M. He stated that McGehee shipments were delivered not later than

9:30 or 10:00 A.M. for six days per week.[4] Mr. King testified that available tonnage in Little Rock was small, and the addition of another truck line would simply mean that the lines could not operate at a profit from Little Rock to McGehee and return. This testimony is borne out by the tables that were offered in evidence.

Average revenue per day for a 3-month period (January, February and March, 1963), for shipments from Little Rock to McGehee, was $41.97, and average revenue per day for the same 3-month period for shipments from McGehee to Little Rock was $5.63.[5] Average weight per day for the 3-month period (January, February and March, 1963), for shipments from Little Rock to McGehee, was 3,339 pounds. Average weight per day for the same period for shipments from McGehee to Little Rock was 439 pounds.

Other testimony by company officials was offered that complaints about Red Line service had been negligible. Red Line uses The Delivery Service, Inc., in Little Rock, for pickups, and E. R. Adcock, general manager, testified that his place of business opens at 7:00 A.M., and that he had made pickups as late as 6:30 or 7:00 P.M. The witness testified that he contacted King with reference to whether he could refuse pickups after 3:00 P.M., and "He set me straight pretty quick on that and said if I was going to do that he would have to get another carrier." The same four men who testified about the inadequate pickup service of ABF from Little Rock to El Dorado also testified to practically the same set of facts relative to pickups for shipments from Little Rock to McGehee, and one additional witness also offered evidence. Actually, the only testimony derogatory to Red Line service was given by the Little Rock witnesses, and Mr. Adcock testified that he had never

---

[4]There was no assurance by appellee that Saturday deliveries would be made.

[5]Burks Motor Freight Lines, Inc., also operates the Little Rock to McGehee and return route.

refused to pick up a shipment, whatever the hour. He also stated that he had not received any complaints from the five witnesses who testified.

We are of the view that the testimony does not establish that public convenience and necessity require additional service. The rule is set out in *Missouri Pacific Railroad Company, Thompson, Trustee* v. *Williams*, 201 Ark. 895, 148 S. W. 2d 644. There, quoting from A.L.R., we said:

" * * * The general rule is that a certificate may not be granted where there is existing service in operation over the route applied for, unless the service is inadequate, or additional service would benefit the general public, or unless the existing carrier has been given an opportunity to furnish such additional service as may be required."

Of course, there is existing service (from two lines) over the route applied for. The evidence of these four people from McGehee, and five from Little Rock, does not establish that the service is inadequate or that additional service would benefit the *general public*, and the existing carrier has not been heretofore called upon to furnish such additional service. *Missouri Pacific Railroad Company, Thompson, Trustee* v. *Williams, supra,* also contains other language which is here pertinent:

" * * * The prime object and real purpose of commission control is to secure adequate sustained service for the public at the least possible cost, and to protect and conserve investments already made for this purpose. Experience has demonstrated beyond any question that competition among natural monopolies is wasteful economically and results finally in insufficient and unsatisfactory service and extravagant rates."

It would certainly appear that the meager tonnage and small revenues derived through shipments from

Little Rock to McGehee and vice-versa, are not sufficient to support another truck line.

Of course, a few individuals or companies might receive some benefit from the granting of a certificate to Missouri Pacific, but the benefit that might accrue in these isolated cases is not what is meant by the term, *"public convenience and necessity."*

On the whole case, we are of the opinion that appellee has failed to meet the burden of establishing that its application should be granted.

Accordingly, the judgment is reversed and the cause remanded to the Pulaski Circuit Court with instructions to direct the Arkansas Commerce Commission to set aside its order herein rendered, and deny appellee's petition.

McFADDIN, J., dissents in part.

AMSLER, J., disqualified and not participating.

ED. F. McFADDIN, Justice, dissenting in part. I agree with that part of the Majority Opinion which refuses appellee, Missouri Pacific Truck Lines, Inc., the permit it sought between Little Rock and El Dorado. I can see no substantial difference between Missouri Pacific's evidence here and that in the previous case of *Arkansas Best Freight* v. *Missouri Pacific Transportation Co.,* 233 Ark. 685, 348 S. W. 2d 694. While *res judicata* may not apply to the Commission's findings, nevertheless our Opinion in the last cited case should have settled the issue.

I dissent, however, from that part of the Majority Opinion which reverses the finding of the Commission in regard to Missouri Pacific's desired permit between Little Rock and McGehee. I will not prolong this dissent by detailing the evidence. It is sufficient to say that I think the evidence sustained the Commission's decision in awarding Missouri Pacific the desired permit to Mc-Gehee.