STATE, EX REL. GEORGE B. WHITNEY, v. HIRAM VAN BUSKIRK.

1. The resignation of a public officer, to take effect at a future day named, when accepted by competent authority, is valid and binding, and will take effect according to its terms.

2. A prospective appointment to public office, made by a body which as then constituted is empowered to fill the vacancy when it arises, is, in the absence of express law forbidding it, a legal appointment, and vests title to the office in the appointee.

3. A deliberative body has the right to vote and reconsider its vote upon measures before it, at its own pleasure, until, by a final vote, accepted as such by itself, a conclusion is reached. Such final action is shown by its adjournment thereon, the public promulgation of its action, or by subsequent proceedings inconsistent with a purpose to review.

4. The power of appointment to office, when executed by the performance of the last act made necessary in its execution, is not revocable without the consent of the appointee.

This information is filed at the instance of George B. Whitney, to test the right of Hiram Van Buskirk to the office of chief of police in the city of Bayonne. The facts set forth in the information, to show the defendant's intrusion in office, are, the possession of the office by the relator, through a valid appointment for an indefinite term; the tender of his resignation to the mayor and council of the city, on December 3d, 1877, to take effect on the 1st day of January, 1878; the acceptance thereof by the mayor and board of councilmen on the 4th day of December, 1877; the nomination by the mayor on that day of the defendant, Hiram Van Buskirk, to the office, his appointment to take effect on the 1st day of January next following; the confirmation on the same day of the defendant's nomination by the board of councilmen, at a regular meeting; the passage by the board of councilmen at a subsequent meeting, held on the 11th day of December, 1877, of resolutions reconsidering their vote by which the nomination of the defendant was confirmed, and by which the resignation of the relator was accepted; the presenting of these resolutions of reconsideration to the mayor; the mayor's return of them to the board of councilmen without his concurrence, and the re-passage by two-thirds of the members of the council, and notice given by the mayor, on December 20th, to the defendant of his appointment; the oath of office taken by the defendant, before the mayor, on the 22d of December; the defendant's entry upon the duties of the office, taking possession thereof on the 1st of January, 1878, against the wish and protest of the relator, and continuing since in the exercise of its powers and functions, without the recognition of the board of councilmen. The facts stand admitted by the defendant's demurrer to the information. The validity of Van Buskirk's appointment is denied, on the alleged ground that the office has not

been vacated by the relator, his resignation not having taken effect by a final acceptance, and that the proceedings for the appointment of the defendant were rescinded and annulled by the board of councilmen before any title to the office vested in the defendant, and while the matter remained within the control of the council.

Argued at June Term, 1878, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the relator, *E. A. S. Man.*

For the defendant, *A. T. McGill.*

The opinion of the court was delivered by

KNAPP, J. The first question for determination is whether the office was vacated by the relator, or a period put to his term by the transactions which took place, as set out in the information.

Under the charter of Bayonne, the term of office of the chief of police is not for any given period of time. His term ends only by removal for cause, accepting another and incompatible office, an accepted resignation, or his death.

Appointment to the office is upon a nomination by the mayor, and a confirmation of his nominee by the common council. §§ 3, 10, *Revised Charter* 1872.

There can be no question of the right of such officer to tender a resignation of his office, and upon the acceptance of the tender his holding ceases. *Dil. on Mun. Corp.*, § 163; *State* v. *Newark*, 3 *Dutcher* 185; *State* v. *Ferguson*, 2 *Vroom* 107.

The information shows that, on the 3d of December, 1877, a communication was presented by the relator, and signed by him, to the mayor, addressed to the mayor and council of the city, in these words—"I respectfully tender my resignation of the office of chief of police of the city of Bayonne, to take effect upon the first day of January, 1878." The mayor presented this to the

board of councilmen at their meeting on the 4th of December, with his approval and acceptance, and requested theirs; and the board, at the same meeting, received and accepted the resignation. The relator, however, insists that this neither vacated the office then, nor ascertained the end of the relator's term of office. And we are referred, in support of this view, to the case of *Biddle* v. *Willard*, 10 *Ind.* 63. The only feature in that case bearing a resemblance to this, is that the resignation of Judge Stuart was tendered to take effect on the 1st of January—a future day. The suit was for a *mandamus* requiring the governor to issue a commission to the plaintiff, who had been chosen at an election occurring after the resignation was presented, and before the time when it was to take effect. It was held, in construing statutes of the state regulating elections, that there should be an *existing vacancy* at the time of the election to validate it; and further, that no such vacancy existed. For this latter ruling two reasons were given: one, that it did not appear that the governor had *accepted* the resignation; the other, "that the vacancy did not occur by Judge Stuart's resignation until January following" the election, which was in October. It was rightly held that a resignation, to take effect at a future day, does not create a present vacancy. That is true whether it is accepted or not, but I am far from thinking that a prospective resignation, tendered and accepted, is without legal validity. Such a rule would be one of public inconvenience, and could be fruitful of no good. It certainly is not asserted by the court in Biddle *v.* Willard, but the propriety of such a practice is commended on grounds of public convenience. There may be such cogent reasons moving a public officer to withdraw from the duties of his office as will constrain the appointing power to accept his surrender of it. If it be to take effect immediately, it may work confusion and disorder in public affairs, such as would not arise if time were given for the selection of a proper successor, and for his fitting instruction in official duties. And we are referred to no case that questions the legality or propriety of such a practice. In my judgment,

this resignation was, on acceptance by the mayor and council, valid and effective to terminate the relator's incumbency, according to its terms, unless the resolution of reconsideration canceled the acceptance.

It is clear that while the matter of acceptance was under consideration by the board of councilmen, it was the right of that body to reconsider its vote, and vote as often as it saw fit upon the question, up to the time when, by a conclusive vote, accepted as such by itself, a determination was reached. *State* v. *Foster*, 2 *Halst.* 101; *State* v. *Justice*, 4 *Zab.* 413; *State, Shreve, pros.,* v. *Crosley*, 7 *Vroom* 428. Such final determination may be evinced by a public promulgation of the result, or by subsequent action inconsistent with the purpose of further review. Here the resignation presented by the mayor's message was voted upon and accepted, and afterward the nomination by the mayor of the defendant to fill the vacancy which would occur by this resignation was taken up by the board, and by its deliberate vote confirmed.

This latter action was entirely inconsistent with the idea that the matter of resignation still remained open for further deliberation. Without any further action on the part of the board, its meeting formally adjourned. Its proceedings, public in their character and binding upon interested parties and the public, were required to be, and presumably were, published to the world in the official newspapers. Under this state of facts can it, with any fairness, be contended that the matter was still in abeyance, and that a conclusive determination had not then been reached? The mayor, who had necessarily joined with them in the act of acceptance, the defendant, who had been appointed, as well as the relator, had the right to consider that final action had been taken, and a settled conclusion reached. We have, then, a resignation tendered, the approval of the mayor, the vote of acceptance by the board of councilmen, the appointment of a successor, the adjournment of the board without an attempt to further revise their action, and the public announcement of their proceedings. It seems to me that the matter then was put beyond

recall or reach of the board, by a reconsideration of their action at the meeting of December 11th. But it is contended by the relator that no new rights had intervened, and that power still remained in the board of councilmen to revoke their action and permit the relator to withdraw his resignation at any time before it went into effect by a surrender of possession of the office, and he claims that the proceedings of the board on the 11th day of December had this effect, and that the resignation, if not withdrawn by the relator thereafter, stood unaccepted until the time when, by its terms, it was to take effect had passed, leaving him still in the office.

A body having the power, and accepting a resignation, may, after such acceptance, revoke their action and consent to a withdrawal, if other rights have not arisen to be affected by such revocation. *Dil. on Mun. Corp.*, § 163.

But this position of the relator assumes the board of councilmen to be clothed with the entire authority to dispose of the matter; a power which cannot be claimed for it, in my judgment. If it be conceded that the defendant, by his nomination and confirmation, acquired no rights to hinder a revocation of the act accepting this resignation, the vote of the board was of itself insufficient to accomplish it. The consent of the mayor as a part of the appointing power was as necessary to this as it was to accept the nomination, and this consent of the mayor was never obtained. If Van Buskirk acquired conflicting rights, (a point which is to be considered,) those rights were not to be disposed of in this way.

My conclusion is, that the proceedings of December 11th did not change the state of things existing at the adjournment of the board on the 4th, and their action accepting the relator's resignation must stand as a finality.

The termination of the relator's term, on the 1st of January, being ascertained, the next question is, was Van Buskirk properly appointed to the office? On December 4th, 1878, as the case shows, he was nominated by the mayor and confirmed by the board of councilmen, after relator's resignation was accepted. The objection urged against this proceeding is

that it was an appointment made while the term of an incumbent was unexpired. There is nothing in the charter of Bayonne requiring such an appointment to be made at or after the *close* of an incumbent's term. Nor would there, under the charter, occur any change in the office of mayor, or in the constitution of the board of councilmen, between the time when the appointment was made and the time when, by the resignation, the office would become actually vacant, and the defendant's appointment take effect.

The question then presented is, whether a body having, as then organized, power to appoint to office when it shall fall vacant, may anticipate the vacancy and fill the office by a prospective appointment, in the absence of any statutory regulation to the contrary. The almost uniform course of practice for years in this state, without question or objection, strongly implies the legality of an appointment thus made; besides, it seems to me that the question is no longer open to controversy in the courts of this state. In the case of *Haight* v. *Love*, 10 *Vroom* 14, 476, by adjudication of this court, as well as by the Court of Errors, on review, an appointment so made was supported. In that case, it is true that the occurring vacancy was anticipated by but a few days, but the principle upon which that appointment was validated is unchanged by the circumstance that as many weeks intervene. The cases cited by the relator in support of an opposite view are not applicable to this case. The case of Biddle v. Willard, already mentioned, went off, as I have already shown, upon the construction of local statutes. The same is true of the case of *People* v. *Wetherell*, 14 *Mich.* 48, and *Nove* v. *Bradley et al.*, 3 *Blackf.* 158. This ground of objection, therefore, must be denied any force.

The defendant's appointment is assailed through the reconsideration proceedings of December 11th. It is claimed that, as to this appointment, the proceedings of the board in confirmation were not a finality. The circumstances attending this appointment and reconsideration are substantially the same as those touching the resignation, and the same rules

apply. It is claimed by the relator that they are varied in a respect which he urges as being material, to wit, that the proceedings for reconsideration were before any notice had been given to the appointee of his appointment. I am at a loss to see, however, that this circumstance is in anywise material in the case; it could only be so upon the idea that it was made part of their act of appointment, because if, without that, the last act to be performed by them in the execution of their power had been performed, its promulgation had passed it beyond their control. Now we are referred to no law, nor am I able to find any on an examination of the charter, which requires such notice to be given, nor am I aware of any general rule which makes such notice a necessary part of their duty. No certificate of appointment or commission to the office is required, and I think, when a vote of confirmation, intended by them to be final, has been taken, and the result publicly proclaimed, they have performed their last act of duty and of power; the matter is no longer *in fieri*, but fully consummate. Nothing decided in the case of *Conger* v. *Gilmer*, 32 *Cal.* 75, aids the relator on the point here made. There the appointing power was held not concluded in its action until they had issued a certificate of appointment, such certificate (as the court held) being made by statute a part of the act of appointment. The general principle, holding the appointing body concluded by the performance of the last legally requisite act, was fully recognized, and the language of Chief Justice Marshall, in *Marbury* v. *Madison*, 1 *Cranch* 54, was cited as declaring the true rule on the subject.

My conclusion, then, upon this case is, that the relator's resignation, to take effect on a future day, was legally admissible, and, when accepted by the mayor and council, (the power competent to receive it,) took effect according to its terms. After resignation formally accepted, the same power may revoke its action, and permit the officer to withdraw his resignation, but this must be with the consent of such officer, and must be before new rights have intervened. Here no consent was given, and the attempted action was intercepted

by a vested right. The action of the board of councilmen on December 4th was final action as an acceptance of the resignation of the relator, as well as to perfect the appointment of the defendant. It resulted in ending the term of the relator on the 1st of January, 1878, and vested in the defendant title to the office, his term of office to begin on the said 1st of January, 1878, when the other ended. That the action of the board of councilmen on the 11th of December was too late as a reconsideration of their action of the 4th, and it did not operate to revoke the acceptance of the relator's resignation, because the full power to do so was not in that board, and could not with full authority, because the rights of Van Buskirk had intervened. Judgment must, therefore, pass in favor of the demurrant.