112 N.J. Super. 175 (1970)
270 A.2d 712
GEORGE T. REAM ET AL., PLAINTIFFS-APPELLANTS,
v.
WILLIAM KUHLMAN ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1970.
Supplemental materials filed September 25, 1970.
October 17, 1970.
October 23, 1970.
November 2, 1970.
Decided November 9, 1970.
*177 Before Judges LEWIS, MATTHEWS and MINTZ.
Mr. William Miller argued the cause for appellants.
Mr. John O. Sitzler, Jr. argued the cause for respondents (Messrs. Mathews & Sitzler, attorneys).
The opinion of the court was delivered by LEWIS, P.J.A.D.
Plaintiffs, five residents and taxpayers of the Township of Evesham (township), on behalf of themselves and all other similarly situated taxpayers, appeal from that part of a judgment of the Chancery Division entered on July 9, 1970 denying their demands for a declaration that Henry W. Haines is the duly appointed tax assessor of the township for the term prescribed by N.J.S.A. 40:46-6.2.
Essentially, the background facts are uncontroverted. In November 1968 Haines was elected tax assessor of the township under the then existing township committee form of government. Thereafter, effective July 1, 1969, the electorate of the township duly adopted Council-Manager Plan B of the Optional Municipal Charter Law, L. 1950, c. 210, N.J.S.A. 40:69A-1 et seq., commonly known as the Faulkner Act. On that date the office occupied by Haines under the pre-existing form of government was abolished *178 pursuant to N.J.S.A. 40:69A-207.[1] By resolution 12C-69 (July 1, 1969) the township council (council) availed itself of the permissive provision of section 207 empowering it to appoint interim municipal officers pending the adoption of reorganizational ordinances, and carried over all officers of the former government, including Haines as tax assessor, for the statutory 30-day transitional period. Subsequently, by resolutions 19C-69 (July 28, 1969) and 26C-69 (September 2, 1969), the terms of the officers and employees of the township were further continued for periods of 30 days and 15 days, respectively.
On October 21, 1969 the township adopted an administrative code (ordinance 20-69), which in § 1-8.3 provides that "[t]he division of Tax Assessments shall consist of a board of three members to be appointed by council and hold office for two years; the first of such appointments to be for one year and the other [sic] for two years. * * *" On the same day, by resolution 42C-69, council appointed Haines to the board of tax assessors for a one-year term commencing July 1, 1969. No further appointments were made until February 17, 1970, when council designated John Howarth and James Hogan as members of the board, each for a term of two years.
Haines was recognized as the tax assessor by Acting Manager Inez Bochis and by Thomas Gramigna, who was appointed township manager (manager) effective September 8, 1969. On or about October 1, 1969 Gramigna, in his official capacity as manager, signed and issued to Haines *179 an identification card certifying him as "Township Taxes [sic] Assessor." Haines was paid for performing the duties of that office, which included the preparation of a complete assessment list for 1970 and the filing of a duplicate thereof with the Burlington County Board of Taxation. This list contained increases in the assessed valuation of 608 properties which Haines found to be underassessed, amounting to about $2.7 million, or about 5% of the tax roll of the township.
Thereafter, following the receipt of 253 letters from taxpayers concerning these assessments, the Burlington County Board of Taxation, on its own initiative, conducted a hearing on February 11, 1970 at which the township appeared by its attorney to contest Haines' assessments. The testimony at the hearing indicated that the reassessed properties which had previously been on the tax rolls at an average assessment ratio of 67% had been raised to 86% of true value to conform generally with the assessments throughout the township.
On March 18, 1970 the county tax board unanimously certified Haines' tax list and assessor's duplicate. Following this action, council indicated it would challenge the validity of the assessments in an appeal to the Division of Tax Appeals. Moreover, the mayor publicly invited taxpayers to join in the appeal or to contest their assessments individually.
In April 1970 plaintiffs initiated the instant proceedings, seeking, among other things, declarations that § 1-8.3 of the 1969 code was invalid and that Haines was entitled to serve a four-year term as tax assessor, and injunctive relief restraining council from acting under the aforementioned section, restraining the township's appeal from the county board"s certification of Haines' assessments and restraining Hogan and Howarth from assuming any duties of the office of tax assessor.
On the return of an order to show cause, and on cross-motions for summary judgment, the judge of the Chancery *180 Division delivered an oral opinion on July 2, which is embodied in an order of July 9, 1970. He declared § 1-8.3 invalid because it contravened the provision of N.J.S.A. 40:46-6.2 requiring a four-year term for tax assessors, and held all appointments made thereunder void. Furthermore, he ruled that the township's appeal from the county board's certification was ultra vires and an unlawful expenditure of public funds. Although the court denied plaintiffs' demand to declare Haines' status as the duly appointed tax assessor, it held that the appointments under § 1-8.3 were invalid and that, inasmuch as Haines was the former assessor, he should continue as temporary assessor until the position was filled.
On July 2, 1970 Richard Messenger, having replaced Gramigna as manager, appointed Howarth, Hogan and Edward Bligh to four-year terms as tax assessors beginning July 1, 1970. In addition, he notified Haines of these appointments and requested that he "return all books, records and other Town property" in his possession. Within a week thereafter, both council and manager appointed Hogan as sole tax assessor for a four-year term. On July 22, 1970 council amended its administrative code (ordinance 15-70), changing § 1-8.3 as follows: "The Division of Tax Assessments shall consist of a board of three members to be appointed by council and hold office for the term of four (4) years * * *." This provision was qualified thusly: "The appointments of the Assessors in their initial term shall be appointed to one (1) year, two (2) years and three (3) years respectively * * *." On the same date, council again appointed Howarth, Hogan and Bligh to the board of tax assessors.
Plaintiffs were unsuccessful in their attempts before the Chancery and Appellate Divisions and our Supreme Court to obtain a stay of that portion of the judgment under review which denied Haines' legal status as a tax assessor.
To facilitate a full consideration of the pending controversy, we entered, at oral argument, a consent order adding Haines as a party plaintiff-appellant, permitting plaintiffs to further amend their complaint to include an allegation *181 challenging the validity of § 1-8.3 of the 1970 code and allowing the record to be supplemented by the addition of an affidavit by Haines and an answering affidavit by Gramigna. At the court's request, counsel has submitted supplemental memoranda.
When the involved fact pattern of this case and the several contentions of the respective parties, augmented by extensive arguments of counsel, are brought into proper focus, there emerge three critical issues for resolution: (1) Who has the power to appoint the township tax assessor? (2) Did the township create a valid board of tax assessors? (3) Was Haines appointed for a four-year statutory term within the meaning of N.J.S.A. 40:46-6.2? We shall consider these questions seriatim.

I

Who has the Power to appoint the Township Tax Assessor
Article 10 of the Faulkner Act, N.J.S.A. 40:69A-99 to 103, "Council-Manager Plan B," provides in substance that a municipality adopting such form of government shall be governed by its provisions together with those of Article 2, N.J.S.A. 40:69A-26 to 30, a general article entitled "Incorporation and Powers"; portions of Article 9 N.J.S.A. 40:69A-86 to 98, dealing with council and manager under "Council-Manager Plan A"; and Article 17, N.J.S.A. 40:69A-150 to 210, containing "Additional Provisions Common to Optional Plans." By the terms of N.J.S.A. 40:69A-26, such a municipality is governed by "all applicable provisions of general law." N.J.S.A. 40:69A-28 defines "general law" to mean "any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities," plus certain enumerated laws not here germane.
The Legislature has not stated with specificity, either in the Faulkner Act or by general law, that "tax assessors" in council-manager municipalities shall be appointed in a *182 given manner. The legislative intent, however, appears to be readily ascertainable from the pertinent statutes when read in pari materia and considered with reference to related legislative history.
The appointing power of the municipal manager is set forth in N.J.S.A. 40:69A-95, which in relevant part provides:
The municipal manager shall:
(a) be the chief executive and administrative official of the municipality; * * *

* * * * * * * *
(c) appoint and remove a deputy manager if one be authorized by the council, all department heads and all other officers, subordinates, and assistants for whose selection or removal no other method is provided in this article [§§ 40:69A-81 to 98] * * *. [Emphasis added]
This section should be considered in conjunction with the language of N.J.S.A. 40:69A-88 and 89. The former reads:
All powers of the municipality and the determination of all matters of policy shall be vested in the municipal council, except as otherwise provided by this act [§§ 40:69A-1 to 210] or by general law. * * * [Emphasis added]
The latter states:
The municipal council shall appoint a municipal manager and a municipal clerk. Both of such offices may be held by the same person. The council may provide for the manner of appointment of a municipal attorney, any planning board, zoning board of adjustment or personnel board in the municipality, and may create commissions and other bodies with advisory powers. * * * [Emphasis added]
A comparison of these sections demonstrates that, except for the appointive power lodged in the council relating to specified nonadministrative personnel, the general power of appointment as to municipal officers is reposed in the manager.
*183 Defendants argue that council is expressly empowered to appoint a "personnel board" and that such term is sufficiently broad to include a board of tax assessors and, by analogy, a single tax assessor. We disagree. Absent a legislative definition of the quoted words, they should be given their ordinary and well-understood meaning. See Fahey v. Jersey City, 52 N.J. 103, 107 (1968). The language of N.J.S.A. 40:69A-89 is substantially the same as that contained in Article 2, § 4-9 of the proposed Optional Charter Plan study draft that preceded the adoption of the Faulkner Act. In a comment respecting §§ 4-8 to 11 of that article, the New Jersey Commission on Municipal Government stated:
The above amendment of 40:81-11 of the Revised Statutes follows the Model City Charter. The model also provides that the council shall appoint members of the personnel board, the planning commission and the zoning board of appeals. [State of New Jersey, Preliminary Statement of The Commission on Municipal Government, at 46 (1948) (hereinafter cited as Commission); emphasis added]
Reference to the Model City Charter in a document prepared by the National Municipal League Committee on Revision of The Model City Charter reveals the nature and scope of the powers and duties of a "personnel board." In short, it is empowered and required to (1) "Advise the council and director" on problems concerning personnel administration; (2) "Advise and assist the director" in fostering educational, civic, professional and employee organizations; (3) make any investigations concerning the administration of personnel in the municipal service; (4) hear certain appeals of officers or employees and report findings and recommendations to the city manager, and (5) perform such other duties "with reference to personnel administration" as the council may require by ordinance. National Municipal League Committee on Revision of The Model City Charter, Model City Charter (5th ed. 1941) Art. VII, § 116 at 48-49.
Moreover, it is a fundamental rule, sometimes described by the maxim noscitur a sociis, that in the construction of *184 statutes associated words and phrases explain and limit each other. Their meaning, when in doubt, may be ascertained by a consideration of companion words and phrases. See McCaffrey, Statutory Construction, § 14 at 40-41 (1953). It is significant that under the Faulkner Act the municipal council may appoint a planning board and zoning board of adjustment, which are quasi-policy-making agencies, and it may create commissions with advisory power. The authority to appoint a "personnel board" is consistent with a legislative intent, absent express statutes authorizing the contrary, to limit council's appointive power to policy-making and advisory agencies. In this regard, it should not be overlooked that the Council-Manager Plan of the Faulkner Act adheres throughout to the basic theory of the manager form  that there should be a distinct separation between policy determination and administration. Commission at 17. See also New Jersey Taxpayers Association, New Jersey's Optional Municipal Charter Law (1964), where it is stated:
The Council-Manager Plan is the product of the best thinking in the field of municipal government. Lines of authority are clear-cut, responsibility is fixed and power is commensurate with responsibility. Administrative power is placed in the hands of a professionally-trained manager who is thoroughly grounded in fiscal, administrative, personnel and other practices essential for effective management. Policy-making and the review of administrative activity belong to the Council. [at 74]
It is thus apparent that a "personnel board," within the contemplation of the cited enactment, does not embrace the office of tax assessor or a board of tax assessors but, rather, pertains to an agency in the nature of an advisory board created by council to aid in the formulation of policy-making determinations and the proper administration thereof, as the same may relate to the officers and employees of the municipality.
We are cited to Jordan v. Zidel, 40 N.J. 244 (1963), and Clifton v. Zweir, 36 N.J. 309 (1962), upon which defendants *185 heavily rely. The former decision involved commissioners of a parking authority. Such an administrative agency has quasi-policy-making powers and is distinguishable from a board of tax assessors. Additionally, the parking authority law, N.J.S.A. 40:11A-4, expressly provides that the governing body shall appoint the commissioners.
In Zweir the issue was whether an elected mayor or manager had the power to appoint members of the planning board. The court said:
* * * The new language, in light of the history, indicates choice of the reasonable criterion that municipal board members who perform policy-making and quasi-judicial functions, rather than mere administrative duties, should be appointed by an official who came into government by vote of the people at large and who must stand for re-election at the end of a definite term. This would be the unquestionable result under all except the manager form and we think it was equally meant here. * * * [36 N.J. at 320]
The last-quoted sentence appears to be dictum and does not negate a conclusion that under N.J.S.A. 40:69A-89 and 95 the appointment of a tax assessor is to be made by the municipal manager.
The Zweir case dealt with a municipality operating under a 1923 manager form of government. There, the court observed that the Municipal Manager Act (R.S. 40:89-10) contained no provision dealing with agencies, like the planning board, which have policy-making functions or quasi-judicial powers. Here, under the Faulkner Act, specific provisions respecting such agencies have been made. In fact, N.J.S.A. 40:69A-89 requires that such board members be appointed by the municipal council. Moreover, N.J.S.A. 40:69A-98 provides that laws conferring powers on the mayor or other executive head are to be construed as meaning municipal manager.
The manager is the chief executive and administrative officer of the municipality, and the statutory sections concerning appointments must be construed in that light. Townsend v. Pequannock Tp., 47 N.J. Super. 294, 301 (Law Div. 1957). In this respect the court in Zweir noted *186 that the 1923 Municipal Manager Act was to be contrasted with the Faulkner Act under which council may provide for the manner of appointment of any planning board, zoning board of adjustment or personnel board. The court further observed that according to the 1923 act council was given express power to appoint the manager, auditor, treasurer, clerk, attorney, advisory boards and assessors. See N.J.S.A. 40:81-11, 40:81-13 and 40:81-16. The 1923 act (L. 1923, c. 113) vested all "administrative, judicial and legislative powers and duties," except as otherwise provided, in council.
In short, that whole municipal scheme was changed by the Faulkner Act. Instead of council appointing policy-making and administrative officers, under the Faulkner Act it may only make appointments authorized by general law or enumerated in N.J.S.A. 40:69A-89, which do not include a tax assessor, board of tax assessors or any other board or commission whose duties and responsibilities are not essentially policy-making or advisory.
It is noteworthy that 22 municipalities of the State have adopted a Council-Manager Plan under the Faulkner Act.[2] We have been advised by letter from counsel for plaintiffs, in response to inquiry from the Bench at oral argument, that in each of those municipalities, except one, the tax assessor (and multiple assessors in two instances) has been appointed by the municipal manager.[3] While such empirical *187 data is not binding upon the judiciary, it is well-established by a wealth of authorities that "resort may be had to long usage and practical interpretation in construing statutes to ascertain their meaning, to explain a doubtful phrase or to illuminate any obscurity." Lane v. Holderman, 23 N.J. 304, 322 (1957); accord, In re Glen Rock, 25 N.J. 241, 246 (1957); In re Petition of Public Service, etc., 103 N.J. Super. 505, 513 (App. Div. 1968). See generally, 2 Sutherland, Statutory Construction (3d ed. 1943), § 5106, "Unofficial interpretation," at 518-520.
We hold that in a Council-Manager Plan B municipality the appointive power over a tax assessor or members of a board of tax assessors is vested in the municipal manager. N.J.S.A. 40:69A-95.

II

Was a valid Board of Tax Assessors created
Section 1-8.3 of the 1969 code abortively attempted to create a three-man board of tax assessors; it is defective in several particulars: the members of the board are to be appointed by the council instead of the manager; the terms of the appointees conflict with N.J.S.A. 40:46-6.2, and the staggered term provision is unsupported by any legal authority, statutory or otherwise. The adjudication of the Chancery Division is based on its opinion that the ordinance "is invalid in its entirety since it only provides a term of office for a tax assessor of two years contrary to N.J.S.A. 40:46-6.2. * * * Because of this decision it is not necessary to decide whether the power to appoint rests with the Township Council or the Township Manager." We do not entirely share that view. See Newman v. Fair Lawn, 31 N.J. 279, 288 (1960), discussed infra.
The challenged section of the 1969 code, however, is fatally defective in that it requires the assessors to be appointed by the council instead of the manager and calls for the staggering of terms in an impermissible manner. Cf. N.J.S.A. 40:46-6.2(a). The 1970 code did not cure all of *188 these defects and it is likewise invalid. Accordingly, the numerous efforts of council, to constitute by various appointments a full membership on the respective boards it improperly attempted to create, were a nullity.

III

Was Haines Appointed For Statutory Term
When a tax assessor or a member of a board of tax assessors is appointed, his designation or ratification must stem from a statutory authorization to make such appointments. The Faulkner Act, as previously noted, makes no mention of tax assessors; it is silent as to their selection or removal. There are, however, applicable provisions of general law which are controlling. N.J.S.A. 40:46-6.2[4] provides that "[t]he term of persons holding the position or office of `tax assessor' in any municipality of this State is fixed at four years."
This court recently had occasion to consider that statute in Madison Tp. v. Fiore, 112 N.J. Super. 23 (App. Div. 1970), where the municipal manager of the township, a Plan E. Faulkner Act municipality, on February 22, 1966 appointed Fiore as tax assessor without stating the length of his term. Fiore was dismissed on February 11, 1970. The trial court held that the statute did not apply to Plan E municipalities. We reversed and declared that Fiore had a four-year term ending June 30, 1970. After citing Clifton *189 v. Zweir, supra, for the proposition that "[j]udicial resolution of such matters must be guided by only one principle: legislative intent" (36 N.J. at 322), we concluded that there can be no doubt that when the Legislature adopted the 1938 legislation "it intended that assessors in all municipalities thereafter have four-year terms, for the statute said so." (112 N.J. Super. at 26) We further observed that the Legislature made its intent doubly plain by providing in N.J.S.A. 40:46-6.3 that 40:46-6.2 shall "be construed and applied to include tax assessors in all municipalities of this State, irrespective of the form of government under which such municipalities may operate * * *" (At 26)
It follows that a municipality is without authority to establish any other term, either longer or shorter, than that fixed by the Legislature, and that once a valid appointment has been made, the office, in contemplation of law, has been filled for the statutory period.
In Gillson v. Heffernan, 40 N.J. 367, 375 (1963), a case dealing with the statutory term of planning board members, the court, adopting the rationale it had previously enunciated in Newman v. Fair Lawn, supra, stated that "[a]ppointments for less than the full legal term, as was the case here, could not give the term a different duration." Newman overruled that part of Salter v. Burk, 83 N.J.L. 152 (Sup. Ct. 1912), which held void an appointment to an office of a different term from that set by statute and applied the principle exposited by Justice Cooley in Stadler v. City of Detroit, 13 Mich. 346 (Sup. Ct. 1865), that the appointment was for the full legal term, notwithstanding the attempt by the appointive authority to give it a different duration. 31 N.J. at 288. The Newman court approvingly cited, among other authorities, Dodsworth v. Mayor of Medford, 308 Mass. 62, 30 N.E.2d 835 (Sup. Jud Ct. 1941). Cf. Beirne v. Gangemi, 74 N.J. Super. 557 (App. Div. 1962), certif. den. 38 N.J. 307 (1962).
*190 The reasons for insulating a tax assessor with a fixed term of office are manifold.[5] His office, an integral part of our state, county and municipal governments, is chargeable with the administration of a statutory system relating to the levy, assessment and collection of property taxes. He is an agent of the Legislature, and his discretionary judgment is reviewable only through the administrative and judicial processes provided by law. Although his jurisdiction is local, his powers and duties are prescribed by the Legislature, and it is of paramount importance that the integrity of his office be in no way diluted by local interference.
In Arace v. Irvington, 75 N.J. Super. 258 (Law Div. 1962), it was decided that the commissioners of the Town of Irvington had no right to challenge the tax assessor's methods in evaluating and assessing properties, and that anyone aggrieved or discriminated against was provided an appropriate method of appeal. It was there emphasized that the tax assessor, in exercising the quasi-judicial functions of his office, must feel free to make an independent judgment. See also Ridgefield Park v. Bergen Cty. Bd. of Taxation, 61 N.J. Super. 170 (Law Div.), rev'd on other grounds 33 N.J. 262 (1960), app. dism. 365 U.S. 648, 81 S.Ct. 834, 5 L.Ed.2d 857 (1961); 4 Cooley, Taxation (4th ed. 1924), § 1601, at 3181.
In recent legislation, as illustrated by N.J.S.A. 54:1-35.25 and N.J.S.A. 40:46-6.2(a), the Legislature has evinced its intent and continuing concern for the independence of assessors.[6]
*191 There are no statutory provisions for "temporary," "holdover" or "interim" appointments but, to the contrary, under N.J.S.A. 40:46-6.2 the four-year term begins on July 1 of the year in which the appointment is made. In the event a vacancy occurs, due to any cause other than the expiration of the term of office, it "shall be filled for the unexpired term only." N.J.S.A. 40:46-15. Also, if there is no qualified assessor in office on the first day of October, the Governor is empowered to intervene and, if need be after ten days' notice, to commission an assessor to perform the duties of that office. N.J.S.A. 40:46-16.
The procedural carry-over provisions incident to the transition of government upon the adoption of a Faulkner Act plan, as provided in N.J.S.A. 40:69A-207, do not alter the substantive powers and obligations of the municipality. While all offices and terms of office (exceptions not here material) are abolished, the grace period for adopting appropriate ordinances to implement the new government is limited to 30 days.
The office of tax assessor, being legislative in origin, does not depend upon a municipal ordinance for its creation; and because no provision was made for a board of assessors during the organizational grace period, the continuance of the statutory office of tax assessor beyond that period constituted it a de jure office. Compare Myers v. Cedar Grove Tp., 36 N.J. 51 (1961). Also note the procedure followed in McCartney v. Franco, 87 N.J. Super. 292 (App. Div. 1965), where a second-class city changed its form of government under the Faulkner Act to a Mayor-Council Plan C. On the effective date of the plan, the city council, by ordinance, continued in existence all prior departments, boards and offices with the sole exception of the board of assessors and adopted a resolution to provide for the temporary organization of the city government pending the preparation of an administrative code. On the same day plaintiff was advised that his services as an assessor were terminated. The subsequently adopted code established an *192 office of city assessor. See also Dobbs v. Pierce, 76 N.J. Super. 64 (Law Div. 1962). Here, there is nothing in the record which affirmatively indicates that the township intended to abolish the office of tax assessor and create a board of tax assessors until nearly three months after the organizational grace period.
Inasmuch as the council made a number of short-term appointments of Haines as the assessor, the question as to the validity of his appointment for a statutory term need only be determined with reference to the actions of the acting manager and the manager who succeeded her, bearing in mind our determination that the appointive power is vested with the municipal manager.
Bochis, the township clerk and acting manager from July 1 to September 8, 1969, acknowledged in her deposition that she had "no reason to question" the legality of Haines' status as assessor, and when asked if she approved of his appointment replied, "At that time, yes." Her successor, Manager Gramigna, testified on deposition:
Q. Beginning September 8, 1969 with your appointment, prior to this litigation did you at any time question the title to office of Henry Haines, his right to serve as assessor?
A. No. Mr. Haines was the assessor when I arrived here. The adoption of the administrative code in my opinion did not change his status as an assessor, but he became one member of a three-man board. He was the first man appointed.
It is undisputed that Haines exercised all the duties and responsibilities of the tax assessor's office from July 1, 1969 to February 17, 1970, when Howarth and Hogan were appointed to the invalid board of tax assessors. During that period the managers repeatedly listed him on the public payroll, approved of the payroll, and publicly acknowledged him as assessor in the listing of municipal officials.
As already noted, on or about October 1, 1969 there was issued to Haines, under the signature of Gramigna as township manager, an identification card certifying that "Henry W. Haines is a Township Taxes [sic] Assessor." *193 Then, too, on March 18, 1970 the county board of taxation recognized the official capacity of Haines when it unanimously certified the 1970 duplicate assessment list he had prepared and filed with the board.
There is decisional support for the theory that the conduct of the township managers constituted an approbation of Haines' status as tax assessor so as to validate his appointment. See Barkus v. Sadloch, 20 N.J. 551 (1956), where our Supreme Court held that the inappropriate appointment of a city employee was subsequently validated by council's acts in approving payrolls upon which the employee's name appeared. In this vein, see also Cetrulo v. Byrne, 31 N.J. 320, 330 (1960), and Kovalycsik v. Garfield, 58 N.J. Super. 229, 239 (App. Div. 1959). Furthermore, there exists a persuasive analogue buttressing Haines' appointment as tax assessor in the language of Chief Justice Marshall in Marbury v. Madison:
* * * if an appointment was to be evidenced by any public act, * * * the performance of such public act would create the officer * *. [5 U.S. 137, at 156, 1 Cranch 137, at 156, 2 L.Ed. 60, at 67 (1803)]
Note, Whitney v. Van Buskirk, 40 N.J.L. 463, 470 (Sup. Ct. 1878), and see 42 Am. Jur., Public Officers, § 100 at 957.
Here, the record is barren of any suggestion that the municipal managers at any time prior to February 17 questioned either Haines' qualifications or authority, or the regularity of his appointment. Rather, their actions plainly demonstrated not only acquiescence in and acknowledgment of his appointment, but an open and unequivocal approval and ratification thereof. Consequently, Haines' status as a tax assessor is that of a de jure officer occupying a de jure office. It is therefore unnecessary for us to consider the possible effects of his public acts had he merely been a de facto officer. Cf. Kovalycsik v. Garfield, supra; Bernard, Public Officials: Elected and Appointed, "De Facto Officers," at 70-72 (1968); Constantineau, A Treatise on The De *194 Facto Doctrine, §§ 203 and 204, at 285-288 (1910), and note generally, §§ 21 and 22, at 30-32.
In the circumstances, we conclude that, after July 1, 1969, Haines was effectively appointed township assessor and that, notwithstanding the efforts to limit the duration of his term by temporary or short-term appointments, the statutory term of four years must govern. To hold otherwise would do violence to the rationale of the Newman case as applied to N.J.S.A. 40:46-6.2 and the legislative intent underlying the adoption of that statute. Thus, in addition to the appointments to the invalid boards already discussed, the attempts by council and Manager Messenger, in July 1970, to replace Haines by appointing Hogan as single tax assessor for a term of four years were also ineffective.
In reaching this conclusion, we are mindful of defendants' argument that, as stated in Downey v. Board of Education, Jersey City, 74 N.J. Super. 548, 554 (App. Div. 1962), "[t]he plain and all-pervading intent of the Faulkner Act is to give a municipality which adopts one of its optional plans a new broom." It is equally important, however, that a municipality embarking on such new form of government should use the right end of the "broom."
The present record is replete with overtones of local pressure and examples of erratic maneuvering which suggest that the directional thinking of the township had as its ultimate objective either Haines' replacement as tax assessor or a diminution of his duties and responsibilities by the creation of a three-man board of tax assessors. This is incompatible both with the spirit and intent of the Faulkner Act and the applicable general law. That is not to say, however, that a municipality is precluded in a proper circumstance from replacing the office of a single tax assessor with a board of tax assessors. See, for example, the case of McCartney v. Franco, supra, 87 N.J. Super. at 298, where this court remarked that the Faulkner Act does not take away the established right of a municipality to abolish offices or positions "when the action is adopted in good *195 faith to effect economy, provide greater efficiency or otherwise promote the public interest." See also, N.J.S.A. 40:69A-90.
That part of the judgment of the Chancery Division before us on appeal is reversed and the matter is remanded for the entry of an appropriate judgment consistent with this opinion.
NOTES
[1] "At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine; [exceptions not here relevant] * * *

Provision for officers and for the organization and administration of the municipal government under the optional plan may be made by resolution pending the adoption of ordinances, but any such resolution shall expire not later than 30 days after the effective date of the optional plan. * * *"
[2] Fitzgerald's Legislative Manual 657-660 (1970).
[3] Letter of September 24, 1970 indicated that the source of information was personal contact by telephone on September 23, 1970 and available administrative codes. Accompanying that letter was a photocopy of pages 7 and 8 of the Assessors' Handbook, published by the Division of Taxation of the Department of the Treasury. Section 103.1 reads in part: "About three-quarters of New Jersey's taxing districts have single assessors, while the rest use boards. Of the individuals acting as municipal assessors throughout the state, about two-thirds are appointed and one-third elected." Table 3 of that work, entitled "Method of Selecting Assessors in New Jersey Municipalities," lists the forms of governmental organization, and as to Council-Manager Form (1950 law) states: "Single assessor or board of assessors appointed by manager. (N.J.S.A. 40:69A-95)."
[4] The following Statement is appended to Assembly Bill No. 316 which was enacted into law effective June 16, 1938, N.J.S.A. 40:46-6.2 (L. 1938, c. 386, § 1):

The purpose of this bill is to fix the term of tax assessors for a period commensurable with the type of work, to conform the term to other analogous positions, and to make it possible for municipalities to be assured the benefit of being able to retain for a reasonable period persons who have acquired experience in the work, so that too rapid terminations of tenure for causes outside the work itself would be less possible. The bill is in the interest of more efficient procedure in the making of tax assessments, and would inure to the general public benefit in that regard.
[5] Note, e.g., n. 4, supra, at 188.
[6] N.J.S.A. 54:1-35.25, (L. 1967, c. 44 § 1), provides for the qualification, examination, certification and tenure of assessors. See references to that statute in Madison Tp. v. Fiore, supra.

N.J.S.A. 40:46-6.2(a), (L. 1968, c. 35, § 1), effective January 1, 1969, permits a municipality "in which there exists a board of assessors" to rearrange the terms of successor members on a one, two or three-year basis; but thereafter their successors shall be appointed for four years.
Why there should be a distinction between pre-existing boards and newly-created boards is not apparent. "Some legislative clarification might well be suggested to be indicated." Townsend v. Pequannock Tp., supra, 47 N.J. Super. at 305.