DONNA STERN, PLAINTIFF, v. ALLEN HALL AND HANK D'ANDREA, DEFENDANTS.

Superior Court of New Jersey
Law Division Burlington County

Decided February 19, 1982.

*Timothy Smith* for plaintiff (*Tomar Kaminsky & Smith*, attorneys).

*George Lincoln Edson* for defendant D'Andrea.

*Russell B. Bershad* for defendant Hall (*Uliase Aberman & Mandel*, attorneys).

HAINES, A. J. S. C.

Plaintiff Donna Stern is the zoning officer and code enforcement official of the Township of Evesham. Defendants Allen Hall and Hank D'Andrea are council members in that township. Evesham has adopted a council-manager form of government under the Faulkner Act, *N.J.S.A.* 40:69A–1 *et seq.* Plaintiff claims that they directed and requested the township manager to remove her from office, contrary to *N.J.S.A.* 40:69A–91. She seeks their removal from office, damages and attorneys' fees.

The relevant part of *N.J.S.A.* 40:69A–91 provides:

> It is the intention of this article [*N.J.S.A.* 40:69A–81 to 98] that the municipal council shall act in all matters as a body, and it is contrary to the spirit of this article for any of its members to seek individually to influence the official acts of the municipal manager, or other officer, or for the council or any of its members to direct or request the appointment of any person to, or his removal from, office; or to interfere in any way with the performance by such officers of their duties. The council and its members shall deal with the administrative service solely through the manager and shall not give orders to any subordinates of the manager either publicly or privately.... Any councilman violating the provisions of this section shall, upon conviction thereof in a court of competent jurisdiction, be disqualified as councilman.

Defendant Hall now moves for dismissal of the complaint on the ground it does not state a cause of action. For the purpose of the motion, the allegations of plaintiff's complaint are deemed to be true.

The statute upon which plaintiff relies has not received any judicial construction. It is a penal enactment, requiring strict construction. The rule is set forth in *State v. Leonardo,* 109 *N.J.Super.* 442 (App.Div.1970):

> We cannot extend the language of a statute beyond that used by the Legislature. A penal statute must be strictly construed and will not be held to

create a liability not clearly fixed by the words of enactment. Before one can be punished under such a statute, the condemned act must be plainly and unmistakably within the statute. Any doubt as to the meaning thereof should be resolved in favor of a defendant. [at 448; citations omitted]

The use of the words "spirit," "official" and "conviction" in the statute here addressed, leads to the contention that the law is uncertain, too vague for enforcement. If such is the case, the statutory penalty of removal from office cannot be imposed since to do so would violate constitutional principles of due process. The rule is stated in *Grayned v. City of Rockford*, 408 *U.S.* 104, 92 *S.Ct.* 2294, 33 *L.Ed.2d* 222 (1972):

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s]" upon sensitive areas of First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked." [at 109, 92 *S.Ct.* at 2299; footnotes omitted]

However, the judicial obligation in construing a statute is to give meaning to all of its words, *Gabin v. Skyline Cabana Club*, 54 *N.J.* 550, 555 (1969), to avoid an unconstitutional result, *Sanitary Vendors v. Byrne*, 40 *N.J.* 157, 162 (1963), and to enforce the legislative will, *State v. Fearick*, 69 *N.J.* 32, 37 (1976).

Here, in considering intention, the different roles established for council and manager in a Faulkner Act community must be understood. Clearly, the Legislature intended a municipality adopting a council-manager plan to be governed by a council acting primarily as a policy-making body. The manager, however, carries out the policies established by council. In the language of *N.J.S.A.* 40:69A–95(a), he is to be "the chief execu-

tive and administrative official of the municipality." That same
section of the statute provides that the manager "*shall*" execute
the municipal laws and ordinances, appoint and remove officials
and employees, negotiate municipal contracts, attend and partic-
ipate in council meetings, recommend action by council, investi-
gate the affairs of officers and departments and perform such
other duties as required by municipal legislation. The govern-
mental scheme has been described as follows:

> The Council-Manager Plan is the product of the best thinking in the field of
> municipal government. Lines of authority are clear-cut, responsibility is fixed
> and power is commensurate with responsibility. Administrative power is placed
> in the hands of a professionally trained Manager who is thoroughly grounded in
> fiscal administrative personnel and other practices essential for effective man-
> agement. Policy making and the review of administrative activity belong to the
> Council [at 74] [N. J. Taxpayers Ass'n, "New Jersey, Optional Municipal Charter
> Law (1964), cited in *Ream v. Kuhlman*, 112 *N.J.Super.* 175 (App.Div.1970)]

*N.J.S.A.* 40:69A–91, upon which plaintiff relies, underlines and
enforces this basic scheme of power separation. Intention is set
forth in express terms: council shall act as a body. Only by so
acting can policy be defined. Individual councilmen are not to
influence the manager; he is not to respond to the will of an
individual, only to the will of council. This rule is of such
significance that violation leads to loss of office.

Viewed from this perspective, the statute is not
vague. On the contrary, legislative intention is clear and em-
phatic. The basic tenet that council "shall act in all matters as a
body," is illustrated by stating that "it is contrary to the spirit
of this article" for a council member, acting alone, to interfere
with official managerial actions. The word "spirit" is not a
nebulous term; in the context of the statute it means essence or
substance. *Roget's International Thesaurus* (3 ed. 1962), 5.2–4.
In using the term "spirit" the Legislature is referring to the
heart of the council-manager law, underlining the rule that
"words in a statute must be interpreted in context to serve the
spirit of the law." *Asbury Park v. Hoek*, 38 *N.J.* 213, 231 (1962).
The actions not to be influenced are "official acts," language
which may require application on a case-by-case basis. That

circumstance does not make the legislation vague in a constitutional sense; case-by-case interpretation is the everyday work of the courts. *Painter v. Painter*, 65 *N.J.* 196, 213 (1973). In the present case plaintiff's removal from office would be an obvious "official" act. Counsel argue that the word "conviction" cannot be understood or applied, by reason of its criminal connotation. Nothing in the Faulkner Act suggests that the proscribed activities are criminal, however, and there is no reason to make the criminal connection. The "conviction" required here is no more than the rendition of a civil judgment, an entirely permissible translation which carries out the obvious intention of the Legislature. *Roget's, supra* at 1006; *Funk & Wagnalls, Standard College Dictionary*, 296 (1977).

These interpretations give meaning to the statutory language, avoid unconstitutional implications and enforce the salutory legislative purpose. The complaint therefore states a cause of action and will not be dismissed.