Vernon JONES, D/B/A Jones Transfer Lines, Appellant,

v.

WEBB TRANSFER LINE, INC., McDuffee Motor Freight, Inc., Wilson Freight Forwarding Company, Appellees.

Court of Appeals of Kentucky.

Oct. 16, 1959.

Herbert D. Liebman, Frankfort, for appellant.

McChesney, Kinker & Pearce, Harry McChesney, Jr., Frankfort, for appellee.

STEWART, Judge.

This is an appeal from a Franklin Circuit Court judgment, which overruled a

final order of the Commissioner of the Department of Motor Transportation (herein called "the department") granting a common carrier certificate to Vernon Jones, d/b/a Jones Transfer Lines (herein called "Jones"). The certificate authorized the transportation of freight by Jones "from Shelbyville via U. S. 60 to Louisville, including Middletown via U. S. 60 bypass, and return."

Jones, whose home is Simpsonville, filed his application with the department on January 7, 1957, for a common carrier certificate seeking authorization to transport general commodities from Shelbyville over U. S. 60 to Louisville, and also to Middletown via U. S. 60 by-pass, and return. While it is in dispute whether the scope of the application was limited only to the three cities just named, that is, whether it embraced them and also all intermediate points, the conclusion we have reached does not require us to resolve this issue. A protest to the application was filed by Webb Transfer Line, Inc., McDuffee Motor Freight, Inc., and Wilson Freight Forwarding Company.

At a hearing held before an examiner on February 13, 1957, the witnesses who appeared for Jones, the appellant, to support the issuance of a certificate to him, included four persons whose evidence we shall hereinafter refer to in detail, and Jones himself, whose testimony mainly concerned his fitness and ability to properly perform the service proposed to be rendered by him. Another witness, Roy F. McMahan, Jr., gave his deposition in Jones' behalf at a later date.

Upon the basis of the proof offered by these witnesses, the examiner found that additional truck service is needed between the points in controversy, stating as his reason that the truck carriers presently operating between the two cities are not sufficiently meeting the haulage needs of the general public. The acting commissioner of the department fully concurred in the findings of the examiner and issued a regular route common carrier certificate to Jones

to operate a motor freight line in conformity with the application. A timely appeal was taken to circuit court by the three protestants, appellees herein, in compliance with KRS 281.780.

The lower court ruled that the department acted without or in excess of its authority; that the final order was not in conformity with the provisions of KRS Chapter 281; and that the findings of fact on the issues raised were not supported by any substantial evidence.

■ Although several questions are raised and discussed by both sides, we are of the opinion that Jones failed to make out a case that the existing intrastate freight service between the points covered by the certificate issued to him is now, or will be in the foreseeable future, inadequate, with the result that the trial judge correctly adjudged his certificate should be revoked.

In this connection, the portion of the subsection of law that governs, requires, as a condition of granting a certificate for common carrier service, a finding "that the existing transportation service is inadequate, and that the proposed service, to the extent to be authorized by the certificate is or will be required by the present and future public convenience and necessity." See KRS 281.630(1).

■ In the case of Eck Miller Transfer Co. v. Armes, Ky., 269 S.W.2d 287, 289, this rule was laid down as a guide for determining whether an existing transportation system is measuring up to the demands of those who require its facilities:

"'* * * the inadequacy must be due either to a substantial deficiency of service facilities, beyond what could be supplied by normal improvements in the ordinary course of business; or to indifference, poor management or disregard of the rights of consumers, persisting over such a period of time as to establish an inability or unwillingness to render adequate service.'"

Applying the foregoing principles to the facts developed in the case at bar, we shall endeavor to determine whether the evidence sustains the examiner's and the department's findings. It will be remembered that the lower court ruled the findings of the department were not supported by any substantial evidence. Jones' evidence, other than his own testimony, consisted of the proof of five witnesses, who represented businesses that are continuously in need of freight transportation service over the route involved. It should be stated here that Webb Transfer Line, Inc. (herein called "Webb") appears to furnish practically all the trucking facilities for intrastate requirements at and between the cities named above. This statement is made for the reason that the record does not show with any degree of clarity what other intrastate freight carriers operate over the particular route involved. We shall detail the pertinent testimony of each witness in the order in which he testified before the examiner.

James Guthrie is the operator of the Shelby Supply Company, located four miles west of Shelbyville. This company sells and services farm machinery, and Guthrie stated he had no complaint about the handling of his shipments by Webb, except he felt extra help should be supplied by Webb to unload certain large pieces of equipment which the company received from time to time. Webb brought out at the hearing, which was not refuted, that, according to the official Tariff 7–B of the department, he is not obliged to furnish such additional assistance, but that the consignee of freight may request it, provided he is willing to pay for it. Webb added that Guthrie had neither asked for extra help nor agreed to pay the charge therefor.

Ike Lair, station foreman of Meade Valley Pipe Line Company, in charge of a 22-inch pipe line that transports crude oil through Shelby County from Texas to Ohio, has had occasion to order certain supplies and Webb was hired to haul all these shipments. The station where Lair works is located near Simpsonville, 4½ to 5½ miles off U. S. 60. Lair stated that items he had ordered were left at Simpsonville at times and this caused him much inconvenience. Webb testified he had notified Lair, in this connection, that an extra fee was chargeable for deliveries made to a rural spot at a distance from U. S. 60, and that Lair had not requested nor agreed to settle for such off-the-route deliveries.

Another complaint was registered by Thomas Louis Lincoln, manager of the Pernell Sausage Company, situated near Old Stone Inn on U. S. 60. This witness testified that a year and a half prior to the hearing, Webb declined to accept a shipment of fresh meat from his company, giving as his reason that he had no refrigeration equipment. Lincoln said he had never again asked Webb to haul his fresh meat, because he has since been transporting his own meat products. Webb explained he now has refrigeration equipment suitable to take care of the sausage company's fresh meat deliveries, if and when it sees fit to take advantage of his facilities.

Roll Forming Corporation, of Shelbyville, manufactures a variety of building parts and fixtures and James N. Combs is the plant manager. The latter testified this company, as a matter of policy, would give none of its business to Webb. The reason for this decision, it was disclosed, was the refusal of Webb, a year or so back, to pay a claim arising out of damage to a piece of machinery Webb delivered. Webb stated the reason for his denial of the claim was because the damage occurred while the equipment was under the control of a connecting carrier that operates outside Kentucky. Combs stated, too, that 98% of the corporation's shipments were consigned out of state, and that the truck line of Huber & Huber, an interstate common carrier, took care of nearly all of these. It was disclosed, too, that the total freight revenue per year on intrastate shipments of Roll Forming Corporation products would only amount to between $500

and $600. He also said appellant, Jones, already does, and would continue to do, practically all its intrastate hauling under a contract carrier permit issued sometime back to him by the department.

Jones' final witness was Roy F. McMahan, who operates the Middletown Manufacturing Company in Middletown, which chiefly fabricates metal parts and fixtures and also does a variety of subcontract work. McMahan testified his company can obtain daily service from Webb only when the latter does not have full loads going either towards Louisville or towards Shelbyville, and that often Webb would not stop to leave a shipment at Middletown but would take it on to its terminal in Louisville where it would have to be picked up later by the company's truck. According to McMahan, much of the company's heavy steel must be handled on a van that can only be loaded and unloaded with a hoisting crane or by a fork-lift truck. McMahan testified his company now did most of its hauling with its own trucks. However, he indicated a desire to have all its transportation requirements taken over by a competent freight carrier. The bulk of this company's deliveries and pickups are in and around Louisville. McMahan admitted he had never talked over his transportation problems with Webb.

Webb argues in his brief that Middletown is situated in a "commercial area" as defined by KRS 281.012(2). This means, he asserts, that every holder of a local cartage certificate at Louisville and every common carrier certificated to move freight in Louisville under KRS 281.617 may serve all points in the commercial area, which would include Middletown, so that there are such a large number of assorted truckers already authorized to serve the plant of this shipper that his testimony could not possibly lend any weight to this application for a certificate embracing the Shelbyville to Louisville run.

■ It was shown that Webb's motor vehicle fleet consists of 26 gasoline and 2 diesel tractors, 49 flat-bed trailers of various types and, in addition, certain van equipment. He has been in the motor common carrier freight business for 29 years, and there is not a shred of testimony in the record which even suggests that he is not fit, willing and able to perform the freight transportation requirements entrusted to him in conformity with KRS 281.630(1). Robert T. Swanson, the general office manager of Webb, testified that Webb rendered freight truck haulage for 115 businesses in Shelbyville and for 14 in Middletown. We may infer that all these businesses have received reasonably adequate service, since all but one business in each city has made no complaint of inadequate service to the department.

In the case at bar we have found no substantial deficiency of service that is not reparable in the ordinary course of business. Nor has any indifference been shown to any shipper; nor has any disregard for the rights of those requiring transportation existed over such a period of time as to establish an inability or unwillingness to render adequate service. Thus the demands made of Webb under his certificate, set forth in the excerpt lifted from the Armes case, mentioned above, have been fulfilled by him.

■ It is well recognized that shippers generally are continually seeking to better their transportation service and that few, if any, would ever concede that they at all times have service adequate for their needs. Each witness who testified in behalf of Jones wanted more common carriers to operate between Shelbyville and Louisville, thinking increased competition in this respect would redound to their favor. Unquestionably it is often to the advantage of shippers if they can add an additional carrier to those already available, but it does not necessarily follow that such action results in sound financial conditions in transportation. In some instances the support of a truck user stems from a personal preference for a particular carrier.

This was indicated by the testimony of the Roll Forming Company representative who frankly showed a desire to have Jones do all its hauling to the exclusion of all others. However, a new carrier service should not be authorized because of a few isolated instances of unsatisfactory service, which the proof reveals is all that occurred in the instant case.

In the case at bar we have found no substantial evidence of inadequacy of present service or the existence of a demand for additional service based on public convenience and necessity. Accordingly, we are of the opinion that the department erred in issuing the certificate and that the circuit court properly nullified the action of the department in this respect.

Wherefore, the judgment is affirmed.