103 N.J. Super. 505 (1968)
247 A.2d 888
PETITION OF PUBLIC SERVICE COORDINATED TRANSPORT FOR APPROVAL TO COMBINE THE PORT NEWARK BUS ROUTE NO. 4 (P.U.C. ROUTE-FILE NO. 310-348) AND THE ORANGE BUS ROUTE NO. 21 (P.U.C. ROUTE-FILE NO. 457-348) TO BE KNOWN AS THE ORANGE-PORT NEWARK BUS ROUTE NO. 21. (P.U.C. ROUTE-FILE NO. 457-348) PUBLIC SERVICE COORDINATED TRANSPORT, PETITIONER-RESPONDENT, AND INDEPENDENT BUS OWNERS' ASSOCIATION, ETC., ET AL., RESPONDENTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1968.
Decided November 25, 1968.
*507 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Paul J. O'Neill argued the cause for appellants Independent Bus Owners' Association, etc., and others.
*508 Mr. Thomas J. McCluskey argued the cause for respondent Public Service Coordinated Transport (Mr. Richard Fryling, attorney).
Mr. Arthur J. Sills, Attorney General, filed a statement in lieu of brief on behalf of respondent Board of Public Utility Commissioners (Mr. William Gural, Deputy Attorney General, of counsel).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Appellants, competing independent bus operators on the West Orange, Springfield Avenue, South Orange Avenue and Roseville bus routes (the independents), appeal from a decision of the Board of Public Utility Commissioners (the Board) approving the petition of Public Service Coordinated Transport (Public Service) to combine its No. 21 Orange bus route with its No. 4 Port Newark bus route into a through route to be known as No. 21 Orange-Port Newark bus route.
Previous to the filing of its petition Public Service held permits to operate 50 buses on the Orange line between the Mississippi Avenue loop in West Orange and the Pennsylvania Station in Newark, and 20 buses on the Port Newark line between its Roseville garage (at 14th Street) and Newark Airport and Port Newark. The petition sought approval of the operation of the two lines as a single one, thereby eliminating passenger changes for Orange line passengers destined for points east of Pennsylvania Station, Newark, and passengers from Port Newark whose destinations were points west of 14th Street. The application was opposed by the independents, some of whom gave transfers to passengers traveling east of Pennsylvania Station.
At the hearing testimony was received from Public Service's traffic manager and six public witnesses. The independents called no witnesses. The examiner reported that the combination of the two lines, providing direct service from West Orange to Port Newark, was in the public interest *509 and better met the requirements of public convenience and necessity, and recommended approval. The independents filed exceptions which were, after hearing, disallowed by the Board. The present appeal is from the Board's order granting the application.
We first dispose of the contention by Public Service that appellants were without sufficient standing to oppose the application. In Public Service, etc., Transp. v. Newark-Elizabeth, etc., Ass'n, 3 N.J. 118, 122-125 (1949), on which it relies, the application involved only the substitution of a similar number of one type of vehicle for another type, and while the objecting independent bus operators had some slight private interest in the action, there was not the slightest public interest to harmonize with it. See Elizabeth Federal S. & L. Ass'n. v. Howell, 24 N.J. 488, 503-504 (1957). Here the potential adverse affect of the proposed change in operation upon the portion of appellants' revenues derived from passengers carried by them destined for points west of 14th Street, and east of Pennsylvania Station, cannot be said to be beyond the pale of the public's interest in safe, adequate and solvent mass transit. Cf. id., at pp. 501-503. We hold that appellants had standing to oppose the application and maintain the present appeal. N.J.S.A. 48:4-11.

I
Appellants first contend that the proofs adduced failed to establish that the proposed combination "is necessary and proper for the public convenience and properly conserves the public interests." R.S. 48:2-14. We arrive at a contrary conclusion.
The Board has jurisdiction to pass upon service or operating changes such as the present one. N.J.S.A. 48:2-13; R.S. 48:2-14. Where the Board has passed on a question within its jurisdiction, its finding should not be reversed unless unwarranted in law or unfounded in fact, or unless a discretionary power has been plainly abused. Hudson *510 Bus, Transp. & Co. v. Board of Public Util. Com'rs, 131 N.J.L. 576, 579-580 (Sup. Ct. 1944); Hohorst v. Marion Bus Transp. Co., Inc., 5 N.J. Super. 279, 282 (App Div. 1949). Here we find the conclusions of the Board to be adequately supported by the proofs. The testimony of five of the six public witnesses pointed up the need for through service between the points indicated, and the inconvenience of changing buses at either 14th Street or Pennsylvania Station. The sixth public witness was of the opinion that operational difficulties would slow up the service if the lines were combined.
Edgerton, Public Service's traffic manager since 1960, testified concerning the increase in the number of passengers using the airport, the advantages which would accrue to the public because of the through service, and the inconvenience attached to the change of buses necessitated by the present method of operation. He also testified that the company's Roseville garage and terminal had been condemned for a new highway, thus doing away with the waiting room used by passengers changing from one line to the other and compelling passengers to make the transfer in the open. He also cited the economic advantage to the company which would follow the decrease in layover time which would result from the combination.
Although they produced no witnesses in opposition, appellants urge that the order should be set aside because the applicants' proofs, while adequate to demonstrate that the proposed through service would be a "convenience" to the traveling public, failed to establish that it was a "necessity." In general, the words "necessary and proper" mean appropriate and adapted to carrying into effect a given object. Cf. Martin's Executors v. Martin, 20 N.J. Eq. 421, 428 (Ch. 1870). In the case of service changes such as the one here proposed the test is public convenience and necessity. In re New Jersey & New York R. Co., 12 N.J. 281, 289 (1953). However, necessity need not be shown in the *511 sense of essential or absolutely indispensable but the predominating and controlling element is the factor of public need for the proposed service. Cf. Pennsylvania R. Co. v. Bd. of Public Utility Com'rs, 11 N.J. 43, 51 (1952). It is sufficient if the proposed service be found to be reasonably requisite to serve the public convenience, Abbott v. Public Utilities Comm., 48 R.I. 196, 136 A. 490 (Sup. Ct. 1927), and conserves the public interests. R.S. 48:3-14.
Here the Board was vested with a degree of expertise which placed it in a favorable position to judge from the testimony referred to whether the requisite test had been met. In re Greenville Bus Co., 17 N.J. 131, 137 (1954). We may not substitute our judgment for that of the Board but are confined to determining whether the evidence before it furnished a reasonable basis for its action. Id., at p. 138. We are satisfied that it did.

II
Appellants next urge that since Public Service had not obtained municipal consents to extend the operation of route No. 21 east beyond Pennsylvania Station, or of route No. 4 west beyond 14th Street, the Board was without jurisdiction to permit through service. Not so. We are here concerned only with a service change whereby through service was authorized over two routes for which Public Service presently held municipal consents. The application was not for an extension of or increase in service, but for a combination or coordination of routes already authorized. The number of buses to be operated on each segment of the route remained the same, i.e., 50 buses on No. 21 and 20 on No. 4. There was to be no change in fares, scheduling or routing. The municipalities along the route were not deprived of their right to object to the through operation since any objections they may have had could have been presented at the hearing before the Board. Here there was none.

*512 III
Defendants' remaining point may be summarized thus: Since the applicant's consents to operate the No. 21 line were derived from its original franchises under the Traction Act, and its consents for the No. 4 line were derived from the so-called "Kates" Act, L. 1916, c. 136 (now N.J.S.A. 48:4-1 et seq.), the Board was without jurisdiction to approve through service by means of a combination of the two routes.
Public Service Coordinated Transport is a successor to Public Service Railway Company and Public Service Transportation Company. The former was organized under the provisions of the Traction Act of 1893, L. 1893, c. 172, and the No. 21 (Orange) bus line is the outgrowth of a street railway line formerly operated by it between West Orange and Newark. By virtue of N.J.S.A. 48:15-41, first enacted in 1934, authority was given to substitute trolley buses or trackless trolleys (here in the form of "all service" vehicles) in lieu of electric street cars. These were deemed to be buses for the purposes of traffic regulation and taxation. N.J.S.A. 48:15-43.2. Thereafter, by virtue of L. 1946, c. 71 (now N.J.S.A. 48:15-41), Public Service was permitted to operate buses in lieu of trolley buses, conditioned only upon approval of the Board.
The Kates Act provided an alternative means of securing the right to operate buses over public streets. It required that applicants first obtain the consents of the municipalities through which the auto bus was to be operated. N.J.S.A. 48:4-3. Companies organized under the Traction Act desiring to operate buses could also proceed under L. 1925, c. 244, R.S. 48:15-37 (permitting direct operation of bus lines), or L. 1928, c. 52, R.S. 48:15-38 (permitting buses in substitution for street railway service), upon obtaining municipal consents therefor. See Public Service, etc., Transp. v. Newark-Elizabeth, etc., Ass'n, supra, 3 N.J., at pp. 125-126.
We hold that the Board was vested with jurisdiction to order that service on Routes 21 and 4 be combined for *513 purposes of operation so as to afford through service, notwithstanding the diverse origins of the municipal consents for their operation.
Appellants would have us hold that the Board was required to apply different service standards, based upon the origin of their rights to operate, to bus lines operating under its jurisdiction. They cite no authority which so holds and we know of none. We are told that in a number of prior decisions the Board has entered orders permitting the combination of bus lines which originally had been street railway lines with bus lines operating under the Kates Act. Such an interpretation by an administrative agency carries great weight in the resolution of any ambiguity in the statute setting forth its powers. In re Borough of Glen Rock, 25 N.J. 241, 246 (1957).
Wholly aside, however, it appears clear that the Board was not precluded from entering the challenged order. By statute it is given general supervision and regulation of, and jurisdiction and control over all public utilities, their equipment, franchises and facilities. N.J.S.A. 48:2-13. These include both street railways and bus lines. Ibid. The Board is authorized to require that the operators of bus lines render safe, adequate and proper service to the public and that their equipment be maintained in such condition as to enable this to be done. N.J.S.A. 48:2-23. It may compel just and reasonable connections with other lines. Atlantic Coast Elec. R. Co. v. Public Utility Board, 92 N.J.L. 168, 175-176 (E. & A. 1918). Further, in respect to coordinated bust and street railway operations (such as were those of Public Service), R.S. 48:15-40 provides that:
"Whenever, in order to serve the public convenience, any street railway or traction company is lawfully operating autobusses in conjunction with its street railway lines, and its autobusses and street railway lines are operated by such company as a co-ordinated system of street transportation, such company as to such system shall be deemed in all respects and for all purposes to be a single public utility furnishing a single service subject to the supervision *514 and regulation, jurisdiction and control of the board of public utility commissioners; * * *." (Emphasis added)
In the preamble to the foregoing section (L. 1928, c. 52) the Legislature recited that when street cars and buses "are lawfully operated by the same company, efficiency and economy and the interests of the public will be best promoted through a complete coordination and unification of the two utilities so that the same may be considered in all respects as one and operated as such under the regulation of the Board * * *." We cannot believe that the Legislature intended that the authority thus vested in the board was to terminate when the operator of a coordinated transit system substituted buses for street cars.
Additionally, we perceive no reason or logic which supports appellants' contention. Whether a bus line be operated under the Kates Act or in lieu of street railway operation under the Traction Act, the carrier's obligation is the same, i.e., to furnish safe, adequate and proper service at a fare to be fixed by the Board. In line with this obligation, "in lieu" bus operation may be permitted over streets other than those covered by the carrier's street railway franchise. N.J.S.A. 48:15-43.3. Appellants urge that since, where buses are substituted for street cars, the statute provides that service by bus shall be considered as compliance with the company's railway franchise, R.S. 48:15-43, and authorizes the Board to permit the resumption of street car service over the route, N.J.S.A. 48:15-42, the practical result of the Board's decision here is to authorize the extension of the street railway service formerly operated between West Orange and the Pennsylvania Station to the airport and Port Newark. Not so. The decision permits no more than the operation of buses (limited to 20) over the Port Newark section of the proposed route. It does not  and could not  permit the resumption of any type of railway service to the airport over streets for which the applicant had no franchise, unless municipal consents were first obtained. N.J.S.A. 48:15-29.
Affirmed.