518 So.2d 1018 (1988)
MILLER TRANSPORTERS, INC.
v.
LOUISIANA PUBLIC SERVICE COMMISSION, et al.
No. 87-CA-1919.
Supreme Court of Louisiana.
January 18, 1988.
*1019 Janet S. Boles, Boles & Mounger, Monroe, John Schwab, Schwab & Walter, Baton Rouge, for plaintiff-appellee.
Marshall B. Brinkley, Baton Rouge, for defendant-appellant.
James L. Ellis, Taylor, Porter, Brooks & Phillips, Baton Rouge, for intervenors-appellants.
DENNIS, Justice.
Miller Transporters, Inc., a motor carrier, applied to the Public Service Commission for a new or additional certificate of public convenience and necessity to operate as an intrastate common carrier. A number of competing common carriers which had previously obtained certificates to conduct similar operations opposed Miller's application. After public hearings, the Public Service Commission found that Miller had failed to show that the public convenience and necessity required such a certificate or would be materially promoted thereby and denied the application. On appeal the district court found that the Public Service Commission's findings were not supported by sufficient evidence, substituted it own finding that Miller had clearly shown that the public convenience and necessity would be materially promoted by the certificate sought, and ordered the Public Service Commission to issue the certificate. The Public Service Commission and the competing carrier opponents appealed to this court. La. Const. Art. 4, § 21(E).

Legal Precepts
A motor carrier may not operate as a common carrier unless the Public Service Commission issues it a certificate based on the Commission's finding, subsequent to notice to competing common carriers and a public hearing, that public convenience and necessity require issuance of the certificate. La.R.S. 45:164. In the event the Public Service Commission previously has issued a certificate to conduct the same operations to another common carrier, the additional certificate may not be granted unless the applicant clearly shows that the public convenience and necessity would be materially promoted thereby. Id.
The convenience and necessity required is that of the entire public affected by the new or additional certificate, as distinguished from that of an individual or any number of individuals. Arkansas-Best Freight System, Inc. v. Missouri Pacific Truck Lines, Inc., 240 Ark. 664, 401 S.W.2d 571 (1966); Ace Delivery Service, Inc. v. Boyd, 111 So.2d 448 (Fla.1959); V.I.P. Limousine Service, Inc. v. Herider-Sinders, Inc., 171 Ind.App. 109, 355 N.E.2d 441 (1976); Petition of Public Service Coordinated Transport, 103 N.J.Super. 505, 247 A.2d 888 (1968); Continental Freight Forwarding Co. v. Public Utilities Commission of Ohio, 126 Ohio St. 16, 183 N.E. 790 (1932); Shupee v. Railroad Commission of Texas, 123 Tex. 521, 73 S.W.2d 505 (1934); Jessup v. Commonwealth, 174 Va. 133, 5 S.E.2d 482 (1939); 60 C.J.S. Motor Vehicles § 90(1) (1969). To be a "public necessity" the new motor carrier service does not have to be absolutely indispensable, but it must provide such an improvement of the existing transportation service as to warrant the cost of making the improvement. Yazoo & M.V.R. Co. v. Louisiana Public Service Commission, 170 La. 441, 128 So. 39 (1930); Santee v. Brady, 209 Ark. 224, 189 S.W.2d 907 (1945); Greyhound Corp., Southeastern Greyhound Lines Division v. Carter, 124 So.2d 9 (Fla.1960); Campbell v. Illinois Commerce Commission, 334 Ill. 293, 165 N.E. 790 (1929); State ex rel. Missouri, Kansas & Oklahoma Coach Lines, Inc. v. Public Service Commission, 238 Mo.App. 317, 179 S.W.2d 132 (1944); Petition of Public Service Coordinated Transport, supra; 60 C.J.S., supra. Among the factors which may be considered in determining public convenience and necessity are whether the new operation or service will serve a useful public purpose, responsive to public demand or need, whether this purpose can and will be served as well by existing carriers, whether it can be served by the applicant without endangering or impairing operations of existing carriers contrary to public interest, and whether it can be served by the applicant without undue jeopardy to highway users or to the *1020 structure and safety of the roads. Goggin Truck Line, Inc. v. United States, 276 F.Supp. 884 (M.D.Tenn.1967); Florida Motor Lines, Inc. v. State Railroad Comm., 101 Fla. 1018, 132 So. 851 (1931); 60 C.J.S., supra, at § 90(2). The mere fact that service rendered by existing motor carriers is allegedly inadequate is not sufficient to establish the right of another carrier to a certificate of convenience and necessity unless it further appears that there is a public necessity for the additional service. Jones v. Webb Transfer Line, Inc., 328 S.W.2d 407 (Ky.1959); Ephraim Freightways, Inc. v. Public Utilities Commission of Colorado, 151 Colo. 596, 380 P.2d 228 (1963); 60 C.J.S., supra, at § 90(2).
The evidentiary and procedural precepts are well established which govern the judicial review of Public Service Commission orders granting or denying certificates of public convenience and necessity. The applicant for a new or additional certificate has the burden of clearly showing that the public convenience and necessity would be materially promoted by the issuance of the certificate. M & G Fleet Service, Inc. v. Louisiana Public Service Commission, 443 So.2d 574, 575 (La.1983); Florane v. Louisiana Public Service Commission, 433 So.2d 120, 123 (La.1983); Dreher Contracting & Equipment Rental, Inc. v. Louisiana Public Service Commission, 396 So.2d 1265, 1266-67 (La.1981); Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666, 667-68 (1972); Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, 247 La. 826, 174 So.2d 644, 647 (1965). Upon judicial review of the Commission's determination of whether the applicant has made such a showing, a court will not upset the agency's finding unless it is based on an error of law or is one which the Commission could not have found reasonably from the evidence. M & G Fleet Services, Inc. v. Louisiana Public Service Commission, supra; Florane v. Louisiana Public Service Commission, supra; Dreher Contracting & Equipment Rental, Inc. v. Louisiana Public Service Commission, supra; Truck Service, Inc. v. Louisiana Public Service Commission, supra; Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, supra.
After considering the evidence and the oral and written arguments of counsel, we conclude that the Public Service Commission was not guilty of arbitrary, capricious or unreasonable action in finding that Miller failed to prove clearly that the proposed certificate would materially promote public convenience and necessity. The evidence was more than adequate to warrant the Commission's finding and denial of the certificate, as will be indicated by the following summary of the record.

Applicant Miller's Case
Miller Transporters, Inc. has an interstate certificate which permits it to transport cargo between points in Louisiana and in other states. Miller also has a limited intrastate certificate which permits it to transport petroleum products within a 150 mile radius of Shreveport and to transport fertilizer from Lake Providence to other points in the state. In the present application, Miller is seeking to expand its intrastate authority to transport certain types of cargo statewide.
In support of its application, Miller presented evidence of its ability to provide transportation services. Miller has 554 tractors and 861 trailers, making it one of the largest carriers operating in the south and giving it the flexibility to move large amounts of equipment on short notice and on a regular basis. This equipment includes two rubber-lined trailers which would be useful in hauling muriatic acid. Miller operates shipping terminals in Shreveport, Arcadia and Baton Rouge.
In support of its claim that the existing intrastate common carrier service is deficient, and as further evidence of its own abilities, Miller presented evidence from the representatives of thirteen firms which engage in both interstate and intrastate shipping.[1] Generally, these witnesses testified *1021 to their satisfaction with Miller's interstate transportation service, desire to use Miller for intrastate shipping and dissatisfaction with the service provided by one or more of the existing intrastate carriers.
Charles T. Williams of Vulcan Materials Company, a shipper of chemicals in bulk, testified that on six occasions within the previous year his company experienced problems obtaining carrier service. He stated that Matlack, Inc. failed on four occasions to provide rubber-lined trailers on short notice for the transportation of hydrocloric acid. Vulcan was able to find an alternate carrier on one occasion and used its own equipment on another, but the company did lose sales to its competitors on the other two occasions. The two other instances of problems involved the contamination of a product by Matlack and a late arrival by Quality Carriers, Inc. Vulcan was able to return the contaminated product back into its stock, but the customer who rejected the contaminated load did not ask Vulcan to replace it. Mr. Williams therefore assumed Vulcan lost this sale to a competitor. In the instance involving Quality Carriers' late arrival, Vulcan was able to handle the load with one of its own tractor-trailers. Finally, Williams declared that Vulcan ships approximately sixty truck loads per month by for-hire carriers and that it would like to use Miller in intrastate shipping.
Allied Corporation's prepared statement related six instances of existing carriers not having the necessary equipment for the transportation of certain commodities. Three involved a movement of bauxite ore from Marrero to West Monroe, while the other three involved the transportation of liquid aluminum. Joseph Guittari, Allied's representative, testified that he could not personally verify the service problems as they related to the transportation of liquid aluminum since his testimony was limited to aluminum sulfate, sulphuric acid and bauxite ore. He also admitted that the shipments of bauxite ore could have been handled over an interstate route by an interstate carrier, such as Miller, but that this service was not used. Finally, he testified that other qualified intrastate carriers which were available were not called upon by Allied.
T. Brice Causey of Causey and Causey, Inc. a fertilizer broker, on direct examination was asked if there were any circumstances in 1984 when he was unable to secure common carrier service. He replied "Yes, sir," but further answered that "I cannot give you specific dates. I didn't bring those records with me." Mr. Causey admitted that he did not call on Stephens Truck Lines, Inc. or Younger Brothers, Inc.
Woodfin Caine of Thompson-Hayward Chemical Company testified that his company twice had trouble procuring rubber-lined equipment on a St. Gabriel to Monroe movement and said he supported Miller's application in order to obtain use of their rubber-lined trailers. Mr. Caine also testified that he was not aware that Miller could have handled those shipments under its interstate authority through Natchez, Mississippi. Additionally, he conceded that he was unaware that Miller had only two rubber-lined trailers in its entire system whereas Matlack had ten in Louisiana between Baton Rouge and New Orleans.
C.J. Schoustra of Olin Corporation testified that his firm would have more flexibility if Miller's services were available, but he could not specify instances of service problems because logs had not been kept by his firm. He admitted that Olin did not call upon or have experience with available authorized intrastate carriers such as Quality Carriers and Younger Brothers due to Olin's policy of using only one primary carrier and one backup carrier at each facility. Furthermore, Olin's verified certification indicated no deficiencies in its intrastate service.
Ronald Barrios of Chem Link, Inc. testified as to difficulties in obtaining shipping services on short notice requests, but he failed to produce any documentation concerning these problems. Mr. Barrios also testified that he had never attempted to use Stephens Truck Lines and Quality Carriers, certified carriers in his area. He admitted that Groendyke Transport, Inc. offered to call on Chem Link daily for loads *1022 going out, but he said that Chem Link declined because it would rather call for carrier service when it was needed.
International Paper Company's Ray Strong testified that an emergency at its Bastrop plant could have been dealt with more effectively if International Paper had been able to call upon Miller for intrastate service. Nevertheless, International Paper's prepared written statement did not cite any problems with service from the existing carriers and Mr. Strong did not testify to any instances of deficient service by those carriers.
Charles L. Lohrke of Phillips Petroleum Company testified that service from the existing intrastate carriers was satisfactory but competition would be good for the industry.
Lamar Self of Mississippi Chemical Corporation, testified that he was supporting the application to get more dependable service for the transportation of anhydrous ammonia, a very seasonal product, because the existing carriers cannot always furnish adequate service when needed.
Dennis Ledet of Paul M. Davison Petroleum Products testified that he had not called on authorized intrastate carriers such as Matlack, Younger Brothers, DSI Transports, Inc., Groendyke and Stephens, and that Davison would only use them if he had to. He also testified that Davison Transport, owned by the same person who owns Davison Petroleum, has all the necessary certification to haul Davison Petroleum products. Mr. Ledet further stated that his company was supporting the Miller application because it wants Miller to be able to carry intrastate as well as interstate.
Joe Maciaszek of MacAllen Chemical, Inc. said his firm experienced several problems with service by some of the certified carriers. For example, he said Matlack did not have the hose length necessary to unload certain commodities. However, he was not aware of other authorized intrastate carrier firms, such as DSI Transports, Stephens Truck Lines, and Groendyke and he said that he would use them if they were available.
Clive Durboraw of Manville Forest Products Corporation testified that his company experienced difficulty in getting a large number of trucks on short notice. However, he admitted that he had failed to call DSI Transports or Groendyke and that both these companies had solicited Manville's business.
Finally, Robert D. Proffitt of Dow Chemical Co., U.S.A., testified that Dow uses all existing carriers holding authority who are interested in handling Dow's traffic. Dow's prepared statement complained that existing carriers Matlack, Groendyke, Quality Carriers, Younger Brothers and DSI Transports do not have sufficient equipment to meet Dow's needs. Nonetheless, Mr. Proffitt testified that when one of the intrastate carriers did not have equipment available, other certificated intrastate carriers did have the equipment to perform the shipment. He also admitted that Quality Carriers had offered to give Dow exclusive use of their equipment and that Quality had done a good job.

The Protestants' Case
Five certificated intrastate carriers presented testimony and exhibits in opposition to Miller's application.[2]
Victor R. Comstock of Groendyke Transport, Inc. testified that his company has seven rubber-lined trailers in its entire system, has had such equipment located in Louisiana in the past and offered to relocate rubber-lined trailers in Louisiana if the need could be justified. He also said Groendyke has discussed with Vulcan the possibility of bringing rubber-lined units into Louisiana to serve Vulcan's needs. According to Groendyke's prepared statement, it had an average of two to seven units available a day and it was prepared to meet the need in Louisiana on bulk liquid commodity transportation.
DSI Transports, Inc.'s representative, John C. Browder, testified that DSI has 322 tractors and 422 trailers in their entire *1023 system, one of which is rubber-lined. He also testified that equipment presently used on interstate shipments is available to handle intrastate traffic in addition to equipment already located in Louisiana.
John Scallan of Quality Carriers, Inc. denied Vulcan's complaint that his firm had been guilty of a late pickup and produced the actual scale tickets evidencing timely service. Mr. Scallan admitted Quality has had complaints from Dow because Quality lacked the equipment needed to haul certain loads, but he said Quality was presently trying to correct the situation. He also stated that Quality had stationed a tractor-trailer unit at Dow Chemical, which was being utilized, and had offered another if Dow needed it. Furthermore, Quality's prepared statement showed that sales calls offering service had been made on Allied Chemical, Olin, Chem Link, International Paper, Manville and Dow.
Younger Brothers, Inc.'s prepared statement indicated that the granting of intrastate authority to Miller will reduce the revenue his firm derives from Louisiana intrastate shipping and that it could possibly result in a cut back of personnel and transfer of some of its equipment from the state. Younger Brothers' representative, Wray E. Hughes, admitted his firm did not presently operate any rubber-lined equipment, but he said it was prepared to add equipment if needed. He also pointed out that about 25% of his company's equipment was not being utilized.
The prepared statement of Matlack, Inc. showed that several of Allied's complaints about service resulted from Allied's mistakingly calling Matlack's dry bulk terminal instead of their liquid bulk terminal, which is the one that handles Allied's shipments. It also indicated that Matlack had made service calls on Causey & Causey, that it was ready to handle business from Davison Petroleum and Manville, that it had stationed equipment at two of Olin's facilities and had offered to dedicate more equipment to Olin, and that it had offered to station equipment at Mississippi Chemical's and Chem Link's facilities. In response to Dow Chemical's complaints, the prepared statement showed that of the eight complaints noted by Dow involving Matlack, three were handled by Matlack on the date requested and four of the remaining five were for same day service. Additionally, it showed that Matlack's Louisiana terminals posted a $942,856 loss for the fiscal year ending September 30, 1984, because of the general economic downturn in Louisiana.
David Kennedy, Matlack's Vice President, testified that Matlack had 11 rubber-lined trailers in Louisiana and 122 in its entire fleet. He also testified that due to business declines, as of the morning of the hearing, Matlack had 62 drivers sitting at its terminals in Louisiana with no work and that Matlack's Louisiana fleet had been decreased in size due to a lack of business. He additionally testified that an additional 25 drivers were currently laid-off and that another 24 had lay-off letters on the way. Finally, he testified that MacAllen Chemical's problem with Matlack not having the proper length of hose for the discharge of chemicals transported by Matlack for MacAllen had been resolved.

Application of Legal Precepts to the Evidence
In our opinion the district court erred in overturning the Public Service Commission's determination. From our review of the record, we are unable to say that the Commission was unreasonable in finding that Miller failed to show clearly that the public convenience and necessity would be materially promoted by the issuance of the certificate applied for.
The applicant Miller showed without question that it is a well equipped, competent motor carrier. However, the Public Service Commission was not unreasonable in its evident conclusion that the addition of Miller's services to the intrastate transportation supply would not bring about sufficient improvement of the existing service as to justify the costs entailed.
Miller's evidence of delays and unsatisfactory service by existing carriers was undermined by several factors. The complaints by Miller's shipper witnesses in general lacked in specificity and documentation. In most instances the shippers' complaints *1024 were directed to an alleged shortcoming of one carrier and did not call into question the totality of the transportation service available. Some of Miller's witnesses had no complaints about existing service but testified in favor of the application merely because they thought it would benefit their own businesses to have another carrier available.
Against the showing by the applicant Miller, the record contains the protests and the evidence of the common carriers which hold existing certificates to provide the transportation service in question. Their representatives presented evidence that they are well equipped and capable of providing the service in satisfaction of the public necessity and convenience. The record also contains substantial evidence that the equipment and services provided by the existing carriers are currently being underutilized because of a general downturn in the economy, that some carriers are presently sustaining intrastate operational losses, and that a dilution of the intrastate revenues shared by carriers which likely would result from an additional certification could bring about an overall decrease in quality and availability of service.
The sum total of the evidence, including the reasonable factual inferences the Commission could draw from the evidence before it, supports a reasonable finding that the public convenience and necessity would not be materially promoted by issuance of the certificate.
For the reasons assigned, the judgment of the district court is reversed and the order of the Commission is reinstated.
REVERSED AND PUBLIC SERVICE COMMISSION ORDER REINSTATED.
NOTES
[1] The testimony of four additional shipper representatives became irrelevant when Miller amended its application to exclude their products from the certificates sought.
[2] Ten carriers actually presented evidence, but five of these witnesses' testimony and documents were irrelevant because of Miller's restrictive amendments.