549 So.2d 850 (1989)
LOUISIANA TANK TRUCK CARRIERS, INC.
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 89-CA-1028.
Supreme Court of Louisiana.
September 12, 1989.
Rehearing Granted in Part and Denied in Part October 19, 1989.
*852 Janet S. Boles, Boles, Boles & Ryan, Baton Rouge, for appellant.
Anthony Milazzo, Jr., Frank J. Uddo, Uddo & Porter, New Orleans, Robert L. Rieger, Jr., Baton Rouge, Basile J. Uddo, New Orleans, for appellee.
DENNIS, Justice.
This case involves the Public Service Commission's grant of additional authority by certificate of public convenience and necessity to Gorman Transport, Inc. As there were existing certificated carriers servicing shippers statewide, the Commission's grant of authority was based on its finding that Gorman had clearly shown that the public convenience and necessity would be materially promoted by issuance of the certificate. La.R.S. 45:164. The Commission's order amended Gorman's existing motor carrier authority by expanding its operating territory from five parishes to statewide, and by adding lubricating oil and petroleum oil to the list of commodities it could legally transport.

Background Facts and Procedural History
Mr. Gary E. Gorman, the owner, operator, driver and sole employee of a one-vehicle trucking firm located in Chalmette was granted a common carrier certificate by the Public Service Commission in 1987 to transport gasoline and related commodities in a five parish territory: St. Bernard, Orleans, Jefferson, St. Tammany, and Washington Parishes. In 1987, Gorman applied to the Commission to amend his certificate to authorize him to transport these commodities and others on a statewide basis and to change the name of his business to Gorman Transport, Inc. A hearing was held on the application before the Commission's hearing examiner on June 8, 1987.
At the hearing, several carriers with existing certificates authorizing similar transportation statewide, opposed Gorman's application, and upon the grant of authority by the Commission, Louisiana Tank Truck Carriers, Inc., an organization of tank truck motor carriers, sought judicial review in the Nineteenth Judicial District Court in East Baton Rouge Parish. The Public Service Commission answered the appeal, and Gorman intervened. After oral argument, the court remanded the case to the Commission for the production of written reasons for its decision to grant Gorman the additional authority. In its written response to the trial court, the Commission stated that "Gorman's proven track record of a high level of service provides and will continue to provide a useful purpose," and that such service warranted the issuance of the certificate. Upon receipt of these reasons, the court affirmed the Commission's action. Louisiana Tank Truck Carriers timely perfected its appeal to this court. La.Const. Art. 4 § 21(E).

Public Convenience and Necessity
"Public convenience and necessity," the test for obtaining a motor carrier certificate, is not defined by the statutes. The nouns in the phrase possess connotations which have evolved from a century of experience of government in the regulation of transportation. When Congress in 1935 amended the Interstate Commerce Act by adding the Motor Carrier Act, it chose the same words to state the condition for new motor lines which had been employed for *853 similar purposes for railroads in the same act since the Transportation Act of 1920. Such use indicated a continuation of the administrative and judicial interpretation of the language. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945).
As in the case of rail carriers, the statutes dealing with motor carriers do not define the term "public convenience and necessity." However, the Interstate Commerce Commission, in one of its earliest and most frequently cited decisions, Pan-American Bus Lines Operations, 1 M.C.C. 190 (1936), established three jurisprudential considerations to be weighed in determining whether proposed operations satisfy the statutory criterion:
The question, in substance, is whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by applicant with the new operation or service proposed without endangering or impairing the operations of existing carriers contrary to the public interest. Id. at 203.
The principles set out by the Interstate Commerce Commission in the Pan-American Bus Lines case are so clear and well reasoned that they have endured and have been accepted generally as a fundamental part of transportation regulatory law. See, e.g., G. Hirschbach, Public Convenience and Necessity in Federal Motor Carrier CasesWhat are the Criteria?, 16 S.D.L. Rev. 351, 364 (1971); G. Chandler, Convenience and Necessity: Motor Carrier Licensing by the Interstate Commerce Commission, 28 Ohio State L.J. 379, 390 (1967).
When our State Legislature enacted the law regulating motor carriers in 1938, it provided that no motor carrier shall operate as a common carrier without first having obtained from the Commission a certificate of "public convenience and necessity," and that no new or additional certificate shall be granted over a route where there is an existing certificate, "unless it be clearly shown that the public convenience and necessity would be materially promoted thereby." La.R.S. 45:164 (Act 301 of 1938).
This Court has incorporated the principles enunciated in the Pan-American Bus Lines case in its own interpretation of the statutory criterion of public convenience and necessity. CTS Enterprises, Inc. v. Louisiana Public Service Commission, 540 So.2d 275 (La.1989); Miller Transporters, Inc. v. Louisiana Public Service Commission, 518 So.2d 1018 (La. 1988). In doing so, however, this Court made it clear that an applicant for authority in a field already occupied by certificated carriers may not succeed by merely proving that his proposed operation is in accordance with public convenience and necessity but he must also show clearly that it will materially promote public convenience and necessity. Miller Transporters, supra at 1019. Also, we have held that a court will not upset the Commission's finding of whether the applicant has made the required showing unless the finding is based on an error of law or is one which the Commission could not have found reasonably from the evidence. CTS Enterprises, supra at 277; Miller Transporters, supra at 1020; M & G Fleet Service, Inc. v. Louisiana Public Service Commission, 443 So.2d 574, 575 (La.1983); Florane v. Louisiana Public Service Commission, 433 So.2d 120, 123 (La.1983). Conversely, it is the court's duty to reverse the Commission's finding if it is based on prejudicial error of law or on material facts that could not have been found reasonably from the evidence.

Application of Statutory Precepts To This Case
Because the Commission previously had issued certificates to conduct the same operations to other common carriers, Gorman, as an applicant for an additional certificate, had the burden of showing clearly that the public convenience and necessity would be materially promoted by its issuance. La.R.S. 45:164. Thus, the applicant faces an onerous dual burden: (A) He must prove that the service he offers is *854 required by public convenience and necessity by showing that: (1) his proposed operation will serve a useful public purpose for which there is a public demand or need; (2) this public purpose cannot and will not be served as well by existing carriers; and (3) applicant can serve this purpose with his new operation without endangering or impairing the operations of existing carriers contrary to the public interest. (B) In addition to proving that his application meets the above test, Gorman must also show clearly that his proposed new operation will materially promote the public convenience and necessity.
1. Public Need or Demand
A carrier seeking operating authority must establish by substantial and competent evidence a public need for the proposed operations. P. Dempsey, Entry Control Under the Interstate Commerce Act: A Comparative Analysis of the Statutory Criteria Governing Entry in Transportation, 13 Wake Forest L.Rev. 729, 736 n. 30. See also, Road Runner Trucking, Inc., 124 M.C.C. 245, 248 (1976); Aero Trucking Inc., 121 M.C.C. 742, 752 (1975); Eleveld Chicago Furniture Service, Inc., 119 M.C.C. 669, 675 (1974); Coastal Tank Lines, Inc., 119 M.C.C. 474, 483 (1974); HearinMiller Transporters, Inc., 110 M.C.C. 217, 220 (1969). Public necessity contemplates a need of the entire public as distinguished from that of an individual or any number of individuals. Miller Transporters, supra at 1019; See also, CTS Enterprises, supra at 281.
More specifically, in order to establish a prima facie case of a public need for the proposed operations, an applicant seeking motor carrier authority should comply with the requirements enumerated by the Interstate Commerce Commission in John Novak Contract Carrier Application, 103 M.C.C. 555 (1967):
Those supporting the application should state with specificity the transportation service which they believe to be required.
The shippers and consignees supporting applications for authority to transport property should identify clearly the commodities they ship or receive, the points to or from which their traffic moves, the volume of freight they would tender to applicant, the transportation services now used for moving their traffic, and any deficiencies in existing services.
Those supporting an application for authority to transport passengers should indicate the frequency with which they would use the proposed service and should identify any transportation services now available and the inadequacies believed to exist in such services. Id. at 558.
See also, CTS Enterprises, supra at 281 n. 9; West Nebraska Express, Inc., 118 M.C.C. 423, 428 (1973); Carl Edwin Cloud, Jr., Common Carrier Application, 115 M.C.C. 77, 79 (1972).
In other words, to make a prima facie case of public need an applicant should tell the Commission (1) what is to be shipped, (2) where the shipments are to move, and (3) how much traffic will be available. Chandler, supra at 392.
Consequently, the applicant will fail to carry his burden of proof that there is a public need for the service if he fails to show that the need of the supporting shippers is significant, fails to have them specifically indicate the volume, frequency of movement and type of product to be hauled, and fails to show that the supporting shippers had sought to avail themselves of the services of carriers who had preexisting authority to serve them. Ashworth Transfer, Inc. v. United States, 315 F.Supp. 199 (D.Utah 1970). See also, Garrett Freightlines, Inc. v. United States, 307 F.Supp. 1245 (D.Idaho 1969). By the same token, additional authority cannot be predicated upon the preference of a shipper or a group of shippers for a particular carrier. If it is apparent that the shippers' desire to have the proposed service is based upon a preference for the service of a particular carrier without regard to the existence of other facilities capable of meeting their transportation requirements, the evidence is insufficient to establish a public *855 need or demand. CTS Enterprises, supra at 284; Clyde R. Sauers, 61 M.C.C. 65, 67 (1952). See also, Hirschbach, supra at 367.
The evidence of record in this case does not provide a sufficient basis for a finding that there is a public need or demand for Gorman's proposed new statewide service. Gorman's six supporting shippers, all of whom were located in his presently certificated area, failed to testify to any significant need for his proposed new operation, i.e., statewide service outside his currently authorized territory. All but one of the shippers who said they would give Gorman some business outside his present authority if he received a state-wide certificate admitted that their needs for this service were being served adequately by carriers with preexisting certificates. The only shipper who did not so testify had never used other carriers, making his testimony regarding a need for service statewide speculative at best. Even this need, which was not significant or unfulfilled, was restricted mainly to a handful of parishes adjacent to or near Gorman's presently authorized five parish territory.
The supporting shippers' advocacy of Gorman's application was candidly based, not on their need for his service, but on their preference for him because of his trustworthy character and the personal attention he was able to give them and their customers as the owner-driver of a one-truck operation. Several of the shippers acknowledged that there were numerous other carriers with existing authority that they could call upon. None of them testified that any of their reasonable transportation needs were not being served by existing carriers.
Even Mr. Gorman seemed to tacitly concede in his own testimony that there was no known public need or demand for his proposed new statewide operation. He testified that if he were granted statewide authority he would buy one additional truck and then wait "to see exactly what type of business is out there" before making any further expansion. He admitted that he had not planned to open an additional terminal and that he had not interviewed or hired any employee. The sum and substance of his testimony was simply that he believed his trucking business would grow and succeed if he were granted additional operating authority, not that he perceived a demonstrable statewide public demand that he proposed to serve.
2. Inadequacy of Existing Carrier Service
The inadequacy of existing services is a fundamental ingredient in the determination of what constitutes the public convenience and necessity. See, e.g., CTS Enterprises, supra; Southern Kansas Greyhound Lines, Inc. v. United States, 134 F.Supp. 502 (W.D.Mo.1955); Hudson Transit Lines, Inc. v. United States, 82 F.Supp. 153 (S.D.N.Y.1948); Inland Motor Freight v. United States, 60 F.Supp. 520 (E.D.Wash.1945). To protect certificated common carriers providing adequate and dependable service, the applicant must affirmatively demonstrate that the proposed transportation service is one that existing available carriers either cannot or will not perform in a reasonably satisfactory manner. Zuzich Truck Lines, Inc., 83 M.C.C. 625, 637 (1960); Dempsey, supra at 739. In other words, existing carriers are ordinarily entitled to handle all traffic which they can transport adequately, efficiently and economically within the scope of their respective operating authorities before a new competitive operation will be authorized, at least where it cannot be demonstrated that the existing carriers are unable or unwilling to satisfy the reasonable transport requirements of the shipping public. CTS Enterprises, supra at 280; South Arkansas Vacuum Service, Inc. v. Louisiana Public Service Commission, 457 So.2d 655, 659 (La.1984); Gulf Coast Pre-Mix Trucking, Inc. v. Louisiana Public Service Commission, 336 So.2d 849, 855 (La.1976); J. Guandolo, Transportation Law (3d ed.1979); Dempsey, supra at 742.
In the absence of a showing that available motor carrier services are materially inadequate, it does not promote the public convenience and necessity to authorize the entry of a competitive newcomer into the *856 field. CTS Enterprises, supra at 281 n. 9; Chandler Trailer Convoy, Inc., 83 M.C.C. 577, 580 (1960). To deprive existing motor carriers of the traffic they are authorized to transport by diluting the field with the addition of a new competitive service can prevent the existing carriers from operating at full capacity. Moreover, such deprivation might result in idle equipment and employees, declining revenues, inactive terminals and inefficient operations. Buanno Transportation Co., 117 M.C.C. 700, 704 (1972). The institution of needlessly duplicative transportation services which have not been proven to be responsive to the public need endangers existing carriers without corresponding benefit to shippers and receivers. CTS Enterprises, supra at 282 n. 9; Bestway Express, Inc., 123 M.C.C. 441, 451 (1975); Landgrebe Motor Transit Inc., 119 M.C.C. 96, 100 (1973); Midwestern Express Inc., 117 M.C.C. 720, 723 (1973).
Part of the applicant's burden to show affirmatively that existing carriers cannot and will not perform the alleged needed service adequately is the submission of evidence explaining why each supporting shipper considers the existing transportation services to be unsatisfactory. The burden is upon the applicant to establish this element of the case, and it is not a matter which is left to the protestants to bring out in rebuttal. Before an application can be granted it must appear that the shipper has made an investigation of available existing service. Authorized carriers are not required to seek out the shipper, and the fact that an opposing carrier has not solicited the business of the supporting shipper is of no particular importance. The applicant is required to show that the shipper has tried and failed to obtain service, or that service, when provided, was inadequate. Warren Transport, Inc., 69 M.C.C. 241, 246 (1956); John G. Miller, 61 M.C.C. 631, 637 (1953); E. Hutchinson and G. Chandler, Evidence In Motor Carrier Application Cases, 11 Vand. L.Rev. 1053, 1066 (1958).
The record in this case does not warrant a reasonable finding that the existing carrier service is inadequate or that existing available carriers cannot or will not adequately perform the service involved in the new operation proposed by applicant. Not one of Gorman's six supporting shipper witnesses testified that he had attempted and failed to obtain service, or that service, when provided, was truly inadequate. None of the shippers had conducted an investigation of available existing service; nor had any called the Commission for a list of carriers. Several of the supporting shippers acknowledged that numerous existing carriers were available to perform the service proposed but admitted they had either not called on them at all or had not done so in a long time. All but one of the shippers testified that they were currently using existing carriers for the type of operations proposed and not one branded the transportation service provided by those carriers as inadequate. In essence, the upshot of the supporting shippers' testimony was not that they had been unable to obtain adequate service from existing carriers but that they preferred doing business with Gorman because of their previous highly satisfactory experience with him.
3. Effect On Existing Carriers
Even when the applicant succeeds in proving that his proposed new operation is responsive to a public need or demand which will not or cannot be served by existing carriers, the applicant still has the burden of showing that the need for the proposed new service outweighs the detriment accruing to the existing carriers so that granting the application is consistent with the public interest. CTS Enterprises, supra; Miller Transporters, supra; Application of Black Hills Stage Lines, Inc., 174 Neb. 425, 118 N.W.2d 498 (1962); Richard R. Johnson, 121 M.C.C. 9 (1975); Liberty Trucking Co., 111 M.C.C. 423 (1970); All American Bus Lines, Inc., 18 M.C.C. 755, (1939). Based on the evidence in the present case, however, a commission properly could not have reached this issue or have found a need to resort to the balancing process, because the applicant here did not prove either that there was a public *857 need for his operation or that the existing service was inadequate.
4. Clear Showing Of Material Promotion
Gorman failed to carry his burden of proving that the ordinary requirements of public convenience and necessity were fulfilled by his proposed new operation. Consequently, his case is even more wanting of proof when measured by the more rigorous standard of La.R.S. 45:164 which demands that it be shown clearly that the proposed operation will materially promote the public convenience and necessity.

Conclusion
The burden of proof is upon an applicant seeking a certificate in a field served by preexisting carriers to show clearly that the proposed operation will materially promote the public convenience and necessity. In determining the issue of public convenience and necessity, the primary question is whether the proposed operation will serve a public demand or need, and whether such demand or need may as well be met by existing carriers. In our opinion, applicant failed to present evidence from which the Commission reasonably could have found that a public need exists for the proposed service. The evidence in support of the application at most shows only a preference by some shippers for the applicant as a carrier. Although they express a preference for the manner and method of his service, significantly they have no material, specific complaints with respect to the service rendered by the protestants which stand willing and able to provide adequate transportation services when called upon. There must be an affirmative showing of a need for the service based upon evidence of a consistent or recurring inability to secure adequate and satisfactory service from existing carriers. No such showing has been made here. Moreover, it is clear that the supporting shippers have not used all the existing services. The existing carriers are entitled to transport within their territories all authorized traffic they can handle efficiently and economically before a new competitive service may be authorized therefor; and the mere preference for a particular carrier is insufficient to support a grant of authority. We conclude, therefore, that the application should not have been granted by the Commission because the evidence does not reasonably support a finding that the proposed service will clearly and materially promote the public convenience and necessity.

Decree
For the reasons assigned, the judgment of the district court is reversed, and the order of the Commission granting the certificate of public convenience and necessity is vacated and set aside. All costs of these proceedings are assessed to the Commission.
JUDGMENT REVERSED; ORDER VACATED.

ON REHEARING APPLICATION
PER CURIAM.
Rehearing is granted for the limited purpose of amending the original opinion and decision with respect to several minor issues. Otherwise rehearing is denied. Louisiana Public Service Commission Order No. T-17560 is vacated only so far as it granted Gary E. Gorman expanded operating territory from his current five parish area to statewide. The Order's provisions which add lubricating oil and petroleum oil to the commodities he can legally transport and approving the requested name change from Gary E. Gorman to Gorman Transport, Inc. were not opposed and therefore are affirmed. Pursuant to La.R.S. 13:5112, we hold, as did our original opinion, that the Public Service Commission shall pay the costs of the proceedings, but we remand to the District Court and instruct it to fix a specific dollar amount to reflect such costs.
AFFIRMED AS AMENDED AND REMANDED TO THE DISTRICT COURT.